**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

CHARLES ANGELL, *et al.*,

*Plaintiffs*,

*v*.

MARKWAYNE MULLIN, *et al.*,

*Defendants*.

Civil Action No. 5:26-cv-05580-KC

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS


STATEMENT OF ISSUES ..... ix

INTRODUCTION ..... 1

BACKGROUND ..... 3

I. Statutory Framework ..... 3

II. The Secretary's Exercise of Waiver Authority ..... 5

III. Procedural History ..... 8

ARGUMENT ..... 9

I. Legal Standard ..... 9

II. Plaintiffs lack standing to challenge the July 27, 2026 Waiver. ..... 9

III. Any Challenge to the Waivers For the Big Bend 2 and 4 Projects is Time Barred. ..... 10

IV. Plaintiffs are not likely to succeed on the merits of their constitutional claims. ..... 12

- A. Plaintiffs are not likely to succeed on their nondelegation claim ..... 12
- B. Plaintiffs are not likely to succeed on their Separation of Powers Claim. ..... 17
- C. Plaintiffs are not likely to succeed on their Take Care Clause claim. ..... 19
- D. Plaintiffs are unlikely to succeed on their Major Questions Doctrine claim. ..... 20
- E. Plaintiffs are unlikely to succeed on their procedural due process claim. ..... 24
- F. Plaintiffs are not likely to succeed on their cumulative due process claim. ..... 27
- G. Plaintiffs are not likely to succeed on their Takings Clause Claim ..... 28

V. Plaintiffs have failed to establish irreparable harm, and the balance of equities and public interest weigh against a preliminary injunction. ..... 29

- A. An injunction will impose substantial and irreparable harm on the United States. ..... 31
- B. The United States' interests decisively outweigh Plaintiffs' speculative harms. ..... 33

CONCLUSION ..... 34

# TABLE OF AUTHORITIES

## CASES

*Acree v. Republic of Iraq*,
370 F.3d 41 (D.C. Cir. 2004) .................... 16

*Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
594 U.S. 758 (2021) .................... 23

*Allen v. Cooper*,
589 U.S. 248 (2020) .................... 26

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
526 U.S. 40 (1999) .................... 24

*Am. Power & Light Co. v. Secs. Exch. Comm'n*,
329 U.S. 90 (1946) .................... 13

*Bailey v. Anderson*,
326 U.S. 203 (1945) .................... 26

*Biden v. Nebraska*,
600 U.S. 477 (2023) .................... 20, 21, 23

*Big Time Vapes, Inc. v. FDA*,
963 F.3d 436 (5th Cir. 2020) .................... 13

*Bragg v. Weaver*,
251 U.S. 57 (1919) .................... 26

*Brnovich v. Biden*,
630 F. Supp. 3d 1157 (D. Ariz. 2022) .................... 19

*Caine v. Hardy*,
943 F.2d 1406 (5th Cir. 1991) .................... 24

*Cedar Point Nursery v. Hassid*,
592 U.S. 139 (2021) .................... 28

*Citizens Bank of Md. v. Strumpf*,
516 U.S. 16 (1995) .................... 15

*Clinton v. City of New York*,
524 U.S. 417 (1998) .................... 15, 17

*Cnty. of El Paso v. Chertoff*,
No. 08-196, 2008 WL 4372693 (W.D. Tex. Aug. 29, 2008),
*cert. denied*, 557 U.S. 915 (2009) ........ 6, 13, 15, 16

*Concernedapte LLC v. P'ships & Unincorporated Assocs. Identified on Schedule A*,
811 F. Supp. 3d 807 (W.D. Tex. 2025) ........ 9

*Ctr. for Biological Diversity v. McAleenan*,
404 F. Supp. 3d 218 (D.D.C. 2019), *cert. denied*, 591 U.S. 1015 (2020) ........ *passim*

*Ctr. for Biological Diversity v. Noem*,
No. CV-25-00365-TUC-AMM, 2026 WL 836278 (D. Ariz. Mar. 26, 2026) ........ 5, 13, 15, 16

*Defs. of Wildlife v. Chertoff*,
527 F. Supp. 2d 119(D.D.C. 2007), *cert. denied*, 554 U.S. 918 (2008) ........ *passim*

*Derden v. McNeel*,
978 F.2d 1453 (5th Cir. 1992) ........ 27

*El Paso Cnty., Texas v. Trump*,
407 F. Supp. 3d 655 (W.D. Tex. 2019) ........ 30

*Evans v. Garza*,
161 F.4th 315 (5th Cir. 2025) ........ 9

*FCC v. Consumers' Rsch.*,
606 U.S. 656 (2025) ........ 12, 13

*Florida v. United States*,
660 F. Supp. 3d 1239 (N.D. Fla. 2023) ........ 19

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
561 U.S. 477 (2010) ........ 19

*Fulcher v. United States*,
632 F.2d 278 (4th Cir. 1980) ........ 26

*Future Proof Brands, LLC v. Molson Coors Bev. Co.*,
982 F.3d 280 (5th Cir. 2020) ........ 9, 29

*Hernandez v. Mesa*,
589 U.S. 93 (2020) ........ 31

*Hudson v. Palmer*,
468 U.S. 517) (1984) ........ 26

*In re Border Infrastructure Env't Litig.*,
284 F. Supp. 3d 1092 (S.D. Cal. 2018),
*cert. denied sub. nom. Animal Legal Def. Fund. v. DHS*, 586 U.S. 1035 (Dec. 3, 2018),
*and aff'd*, 915 F.3d 1213 (9th Cir. 2019) .................................................. 5, 13, 20, 27

*In re Nat'l Sec. Agency Telecomms. Recs. Litig. v. AT&T Corp.*,
671 F.3d 881 (9th Cir. 2011)................................................................................ 16

*Jackson Women's Health Org. v. Currier*,
760 F.3d 448 (5th Cir. 2014).................................................................................. 9

*Joslin Mfg. Co. v. City of Providence*,
262 U.S. 668, (1923) ........................................................................................... 26

*Ky. Dep't of Corr. v. Thompson*,
490 U.S. 454 (1989) ............................................................................................ 24

*La Posta Band of Diegueno Mission Indians v. Trump*,
No. 3:20-cv-01552-AJB-MSB, 2020 WL 14042584 (S.D. Cal. Sept. 9, 2020)........................ 30

*Landon v. Plasencia*,
459 U.S. 21 (1982) .............................................................................................. 31

*Las Ams. Immigrant Advoc. Ctr. v. Biden*,
571 F. Supp. 3d 1173 (D. Or. 2021)...................................................................... 19

*Learning Res., Inc. v. Trump*,
607 U.S. 229 (2026) ....................................................................................... 21, 23

*Liberty Mut. Ins. Co. v. La. Dep't of Ins.*,
62 F.3d 115 (5th Cir.1995)................................................................................... 27

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .............................................................................................. 9

*Manzanita Band of Kumeyaay Nation v. Wolf*,
496 F. Supp. 3d 257 (D.D.C. 2020) ...................................................................... 30

*Mayfield v. U.S. Dep't of Lab.*,
117 F.4th 611 (5th Cir. 2024)................................................................................ 20

*Mistretta v. United States*,
488 U.S. 361 (1989) ............................................................................................ 18

*Moore v. Bryant*,
853 F.3d 245 (5th Cir. 2017).................................................................................. 9

*Munajj v. City of Fredericksburg*,
No. 1:24-CV-1343-RP, 2025 WL 1879606 (W.D. Tex. June 11, 2025),
*aff'd,* No. 25-50535, 2026 WL 897005 (5th Cir. Apr. 1, 2026) ............ 28

*Murthy v. Missouri*,
603 U.S. 43 (2024) ............ 10

*N. Am. Butterfly Ass'n v. Nielsen*,
368 F. Supp. 3d 1 (D.D.C. 2019),
*aff'd in part*, 977 F.3d 1244 (D.C. Cir. 2020) ............ 5

*N. Am. Butterfly Ass'n v. Nielsen*,
977 F.3d 1244 (D.C. Cir. 2020) ............ 27

*Nat'l Fed'n of Indep. Bus. (NFIB) v. Occupational Safety & Health Admin. (OSHA),*
595 U.S. 109 (2022) ............ 23

*Nat'l Infusion Ctr. Ass'n v. Kennedy*,
798 F. Supp. 3d 748 (W.D. Tex. 2025),
*aff'd*, --- F.4th ---, 2026 WL 2517285 (5th Cir. Aug. 26, 2025) ............ 12

*Nat'l Treasury Emps. Union v. Von Raab*,
489 U.S. 656 (1989) ............ 31

*Parratt v. Taylor*,
451 U.S. 527 (1981) ............ 26

*Patchak v. Zinke*,
583 U.S. 244 (2018) ............ 18

*Presidio Mun. Dev. Dist. v. DHS*,
No. CV 26-2146 (RBW), 2026 WL 2213850 (D.D.C. Aug. 2, 2026) ............ 6

*Presley v. City of Charlottesville*,
464 F.3d 480 (4th Cir. 2006) ............ 26

*Pugin v. Garland*,
599 U.S. 600 (2023) ............ 15

*Quarles v. United States*,
587 U.S. 645 (2019) ............ 15

*Republic of Iraq v. Beaty,*
556 U.S. 848 (2009) ............ 16

*Save Our Heritage Org. v. Gonzalez*,
533 F. Supp. 2d 58 (D.D.C. 2008) ........................................................................ 6, 13, 27

*Schroeder v. City of New York*,
371 U.S. 208 (1962) ........................................................................................................ 26

*Sierra Club v. Ashcroft*,
No. 04-272, 2005 WL 8153059 (S.D. Cal. Dec. 13, 2005)................................................. 6, 13

*Sierra Club v. Trump*,
379 F. Supp. 3d 883 (N.D. Cal. 2019),
*aff'd*, 963 F.3d 874 (9th Cir. 2020), *vacated and remanded*, 142 S. Ct. 46 (2021) .................... 5

*Smith v. Fed. Rsrv. Bank of N.Y.*,
280 F. Supp. 2d 314 (S.D.N.Y. 2003), *aff'd*, 346 F.3d 264 (2d Cir. 2003) ............................. 17

*Stuto v. Fleishman*,
164 F.3d 820 (2d Cir. 1999)............................................................................................. 26

*Tex. & Pac. Ry. Co. v. Abilene Cotton Oil Co.*,
204 U.S. 426 (1907) ........................................................................................................ 15

*Tex. Tobacco Barn, L.L.C. v. U.S. Dep't of Health & Hum. Servs.*,
180 F.4th 229 (5th Cir. 2026)........................................................................................... 22

*Trump v. Sierra Club*,
588 U.S. 930 (2019) ........................................................................................................ 30

*United States v. James Daniel Good Real Prop.*,
510 U.S. 43 (1993) .......................................................................................................... 24

*United States v. Merkt*,
794 F.2d 950 (5th Cir. 1986)............................................................................................ 31

*Valley v. Rapides Par. Sch. Bd.*,
118 F.3d 1047 (5th Cir. 1997)............................................................................................ 9

*West Virginia v. EPA*,
597 U.S. 697 (2022) ............................................................................................. 20, 21, 23

*Whole Woman's Health v. Paxton*,
264 F.Supp.3d 813 (W.D. Tex. 2017) .................................................................................. 9

*Winter v. Nat. Res. Def. Council, Inc.*,
555 U.S. 7 (2008) ....................................................................................................... 29, 33

**CONSTITUTION**

U.S. Const. art. II, § 3 ........ 19

U.S. Const. amend. V........ 24

**STATUTES**

6 U.S.C. § 202(1)-(2) ........ 3

8 U.S.C. § 1103 note........ 3, 14

8 U.S.C. § 1701 note........ 3, 33

25 U.S.C. § 3406(d) ........ 17

28 U.S.C. § 1346(a)(2)........ 26

28 U.S.C. § 1491(a)(1)........ 27

40 U.S.C. § 3114........ 28

Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"),
Pub. L. No. 104-208, 110 Stat. 3009 (8 U.S.C. § 1103 note) ........ *passim*

REAL ID Act of 2005,
Pub. L. No. 109-13, 119 Stat. 231........ 4, 15

Dep't of Homeland Security Appropriations Act, 2008,
Pub. L. No. 110-161, 121 Stat. 2090 (2007)........ 4, 15, 22

Deficit Reduction Act of 2005,
Pub. L. No. 109-171, 120 Stat. 4 (2006)........ 17

Secure Fence Act of 2006,
Pub. L. No. 109-367, 120 Stat. 2638 (8 U.S.C. § 1701 note) ........ 3, 4, 15, 33

**LEGISLATIVE HISTORIES**

H.R. Rep. No. 109-72 (2005) (Conf. Rep.)........ 4, 5, 22

**REGULATIONS**

70 Fed. Reg. 55622 (Sept. 22, 2005) ........ 5

72 Fed. Reg. 60870 (Oct. 26, 2007)........ 5

73 Fed. Reg. 19078 (Apr. 8, 2008) .......... 5

82 Fed. Reg. 35984 (Aug. 2, 2017) .......... 5

84 Fed. Reg. 21798 (May 15, 2019) .......... 5

90 Fed. Reg. 23946 (June 5, 2025) .......... 5

91 Fed. Reg. 7297 (Feb. 17, 2026) .......... 6, 32

91 Fed. Reg. 27969 (May 15, 2026) .......... 7

91 Fed. Reg. 34831 (June 9, 2026) .......... 7, 11

91 Fed. Reg. 40550 (July 2, 2026) .......... 6, 11

91 Fed. Reg. 46939 (July 27, 2026) .......... 7

Declaring a National Emergency at the S. Border of the United States, Proclamation No. 10886, 90 Fed. Reg. 8327 (Jan. 20, 2025) .......... 32

Protecting the American People Against Invasion, Exec. Order No. 14159, 90 Fed. Reg. 8443 (Jan. 20, 2025). .......... 31, 32

Securing Our Borders, Exec. Order No. 14165, 90 Fed. Reg. 8467 (Jan. 20, 2025) .......... 31, 32

**OTHER AUTHORITIES**

Legal Information Institute, 8 U.S. Code § 1103-Powers and duties of the Secretary, the Under Secretary, and the Attorney General, https://perma.cc/8VYD-3HEP .......... 14

U.S. Customs and Border Protection, Nationwide Drug Seizures. https://www.cbp.gov/document/stats/nationwide-drug-seizures .......... 33

## STATEMENT OF ISSUES

1. Whether Plaintiffs are likely to succeed on the merits of their claim that the Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. No. 104-208, div. C, tit. I § 102, 110 Stat. 3009-554 (Sept. 30, 1996), codified at 8 U.S.C. § 1103 note, violates the Non-Delegation Doctrine by allowing the Secretary of Homeland Security to issue waivers of laws under the Illegal Immigration Reform and Immigrant Responsibility Act.
2. Whether Plaintiffs are likely to succeed on the merits of their claim that the Illegal Immigration Reform and Immigrant Responsibility Act violates the Separation of Powers.
3. Whether Plaintiffs are likely to succeed on the merits of their claim that the Secretary of Homeland Security's issuance of a Waiver on July 27, 2026 under the Illegal Immigration Reform and Immigrant Responsibility Act violates the Take Care Clause.
4. Whether Plaintiffs are likely to succeed on the merits of their claim that the Secretary of Homeland Security's issuance of a Waiver on July 27, 2026 under the Illegal Immigration Reform and Immigrant Responsibility Act violates the Major Questions Doctrine.
5. Whether Plaintiffs are likely to succeed on the merits of their claim that the Defendants' alleged taking of Plaintiffs' property violates the Fifth Amendment's procedural due process requirement.
6. Whether Plaintiffs are likely to succeed on the merits of their claim that §102(c) of the Illegal Immigration Reform and Immigrant Responsibility Act cumulatively violates the due process clause of the Fifth Amendment.
7. Whether Plaintiffs are likely to succeed on the merits of their claim that the government's alleged taking of Plaintiffs' property violates the Takings Clause because the Secretary of Homeland Security lacks statutory and constitutional authorization to take Plaintiffs' property.
8. Whether Plaintiffs are likely to succeed on the merits of their claim that Defendants' barrier construction in the Big Bend Sector violates the Appropriations Clause because Defendants are using appropriated funds pursuant to an unconstitutional statute and contrary to the text of the Illegal Immigration Reform and Immigrant Responsibility Act.
9. Whether Plaintiffs will suffer irreparable harm in the absence of a temporary restraining order or preliminary injunction.
10. Whether the public interest and balance of the equities favor temporarily restraining or preliminarily enjoining Defendants from pursuing border barrier construction projects pursuant to the waivers.

## INTRODUCTION

Defendants Markwayne Mullin, in his official capacity as Secretary of Homeland Security, the U.S. Department of Homeland Security ("DHS"), Rodney S. Scott, in his official capacity as Commissioner of U.S. Customs and Border Protection, U.S. Customs and Border Protection ("CBP"), Josh B. Barret, in his official capacity as Acting Chief Patrol Agent of the United States Big Bend Border Patrol Sector, Lieutenant General William H. Graham, Jr., in his official capacity as Chief of Engineers and Commanding General of the U.S. Army Corps of Engineers, and the United States Army Corps of Engineers ("USACE"), hereby oppose Plaintiffs' Motion for Preliminary Injunction.

Plaintiffs bring various claims alleging that the Secretary of Homeland Security's waiver of certain laws under the Illegal Immigration Reform and Immigrant Responsibility Act on July 27, 2026 (the "July 27 Waiver"), and the statute itself, violate the Constitution. However, Plaintiffs challenge the wrong waiver, as the July 27 Waiver covers only a portion of the U.S. Border Patrol Big Bend Sector. Plaintiffs' alleged harms stem from injuries in Big Bend National Park, Big Bend Ranch State Park, and Plaintiff Angell's personal property. None of those areas are located within the geographic scope of the July 27 Waiver. As such, Plaintiffs lack standing and the Court should deny the Motion on that ground alone.

Plaintiffs also cannot bring a challenge to the waivers associated with construction in Big Bend National Park, Big Bend Ranch State Park, and Plaintiff Angell's personal property because any such claims are barred by the statute of limitations. Congress expressly prohibited constitutional challenges to waivers filed 60 days after the Secretary's action. As the waivers for the Parks and Plaintiffs' property were filed on June 9 and July 2, 2026, respectively, the statutory deadline to challenge them has expired.

Even assuming the Court could consider Plaintiffs' constitutional claims on the merits, such theories have no credible basis in constitutional jurisprudence. Other courts have unanimously rejected identical Non-Delegation, Separation of Powers, and Take Care challenges to DHS's waiver authority, including one in this District, and Plaintiffs provide no basis for this Court to reach a different conclusion. Plaintiffs' novel Major Questions Doctrine argument similarly fails. The Court lacks jurisdiction to consider this type of non-constitutional claim and, in any event, Congress has provided clear statutory authority for DHS to construct barriers along the southern border and waive all laws necessary to expedite such construction. Additionally, Plaintiffs' Due Process and Takings claims fail because the federal government has not taken Plaintiff Angell's personal property, and even if that were to happen in the future, he would have adequate post deprivation remedies to receive appropriate compensation for any future taking. This Court should therefore deny Plaintiffs' Motion because their claims stand no likelihood of success on the merits.

Plaintiffs' motion also fails on the remaining factors required for a preliminary injunction or temporary restraining order. The government has a compelling interest in vigorous border security and enforcement of the Nation's immigration laws. DHS identified the border infrastructure projects at issue here because of the high rates of illegal entries and drug smuggling in the United States Border Patrol Big Bend Sector and Del Rio Sector in south Texas. An injunction preventing construction of border barrier and other needed infrastructure in this area would frustrate the government's ability to stop the flow of drugs and illegal border crossings and harm the public's interest. By contrast, Plaintiffs assert only speculative injuries that are insufficient to carry their heavy burden for preliminary relief. There is also no plan to install pedestrian barriers in the National Park or Big Bend Ranch State Park, or install new stadium or

LED lighting in Big Bend National Park. Further, CBP has extensive procedures in place to minimize the effects of construction on the environment.

For these reasons, as set forth below, Defendants respectfully request that the Court deny Plaintiff's Motion.

## BACKGROUND

### I. Statutory Framework

DHS is responsible for border security and the detection and prevention of illegal entry into the United States. *See, e.g.*, 6 U.S.C. § 202(1)-(2). Congress has ordered DHS to achieve and maintain operational control of the international land border. *See* Secure Fence Act of 2006, Pub. L. No. 109-367, § 2(a), 120 Stat. 2638 (8 U.S.C. § 1701 note). "Operational control" means "prevention of all unlawful entries into the United States, including entries by terrorists, other unlawful aliens, instruments of terrorism, narcotics, and other contraband." *Id.* § 2(b).

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") is one of the statutory authorities provided to DHS to carry out its border security mission. *See* Pub. L. No. 104-208, div. C, tit. I § 102, 110 Stat. 3009. IIRIRA requires the Secretary of Homeland Security to "take such actions as may be necessary to install additional physical barriers and roads (including the removal of obstacles to detection of illegal entrants) in the vicinity of the United States border to deter illegal crossings in areas of high illegal entry into the United States." *Id.* § 102(a), codified at 8 U.S.C. § 1103 note.

In section 102(b), Congress provided certain requirements for implementing the broad mandate laid out in section 102(a). These requirements have varied over the years. For example, in 1996, Congress specified that, in "carrying out subsection (a), the [agency] shall provide for the construction . . . of second and third fences, in addition to the existing reinforced fence, and for roads between the fences" in a 14-mile section near San Diego. *Id.* § 102(b)(1). In 2006, Congress

struck the reference to San Diego and required construction of "[at] least 2 layers of reinforced fencing, [and] the installation of additional physical barriers, roads, lighting, cameras, and sensors" in five specified locations along the southern border, with deadlines for certain of the projects. Pub. L. No. 109-367, § 3(1)(A). In the most recent amendment, Congress removed the geographic specifications set out in 2006 and instead required "construct[ion of] reinforced fencing *along not less than 700 miles of the southwest border*" and further gave the Secretary discretion to determine "where fencing would be most practical and effective" with the goal "to gain operational control of the southwest border." Pub. L. No. 110-161, div. E, tit. V, § 564, 121 Stat. 1844, 2090 (2007) (emphasis added); *see also* IIRIRA § 102(b)(1)(D) (as amended) (stating that the Secretary is free to determine that the use or placement of "fencing, physical barriers, roads, lighting, cameras, and sensors in a particular location" is not "the most appropriate means to achieve and maintain operational control over the international border" at that location).

In addition to these guidelines, Congress provided two mechanisms to ensure expeditious barrier construction. First, Congress granted the Secretary "the authority to waive all legal requirements such Secretary, in such Secretary's sole discretion, determines necessary to ensure expeditious construction of the barriers and roads under this section." *Id.* § 102(c)(1). Congress originally limited this provision to the Endangered Species Act ("ESA") and the National Environmental Policy Act ("NEPA"), *see* Pub. L. No. 104-208, div. C, tit. I, § 102(c), but later expanded it to include "all legal requirements," Pub. L. No. 109-13, div. B, tit. I, § 102(c)(1), 119 Stat. 231, 306 (2005); *see also* H.R. Rep. No. 109-72, at 171 (2005) (Conf. Rep.) (explaining "Congress' intent that the . . . waiver authority extends to any local, state or federal statute, regulation, or administrative order that could impede expeditious construction of border security infrastructure").

Second, Congress created a streamlined system of judicial review for challenges to the Secretary's waiver authority. It gave federal courts "exclusive jurisdiction" over such challenges and limited those challenges to allegations of a constitutional violation. IIRIRA §102(c)(2)(A). Congress also required that constitutional challenges "shall be filed not later than 60 days after the date of the action or decision made by the Secretary of Homeland Security." *Id.* at § 102(c)(2)(B), (C). "A claim shall be barred unless it is filed within the time specified." *Id.* The only appellate review is a certiorari petition to the U.S. Supreme Court. *Id.* The conference report explained that the strictly limited review reflected the "Conferees' intent [] to ensure that judicial review of actions or decisions of the Secretary not delay the expeditious construction of border security infrastructure, thereby defeating the purpose of the Secretary's waiver." H.R. Rep. No. 109-72, at 172.

## II. The Secretary's Exercise of Waiver Authority

Since 2005, the Secretary has repeatedly issued waiver determinations under the IIRIRA to ensure expeditious construction of barriers and roads along the border. *See, e.g.*, 90 Fed. Reg. 23946 (June 5, 2025); 84 Fed. Reg. 21798 (May 15, 2019); 82 Fed. Reg. 35984 (Aug. 2, 2017); 73 Fed. Reg. 19078 (Apr. 8, 2008); 72 Fed. Reg. 60870 (Oct. 26, 2007); 70 Fed. Reg. 55622 (Sept. 22, 2005). Every judicial challenge to these determinations has been dismissed. *See Ctr. for Biological Diversity v. Noem*, No. CV-25-00365-TUC-AMM, 2026 WL 836278 (D. Ariz. Mar. 26, 2026); *Ctr. for Biological Diversity v. McAleenan*, 404 F. Supp. 3d 218 (D.D.C. 2019), *cert. denied*, 591 U.S. 1015 (2020); *In re Border Infrastructure Env't Litig.*, 284 F. Supp. 3d 1092 (S.D. Cal. 2018), *cert. denied sub. nom. Animal Legal Def. Fund. v. DHS*, 586 U.S. 1035 (Dec. 3, 2018), *and aff'd*, 915 F.3d 1213 (9th Cir. 2019); *Sierra Club v. Trump*, 379 F. Supp. 3d 883, 922-23 (N.D. Cal. 2019), *aff'd*, 963 F.3d 874 (9th Cir. 2020), *vacated and remanded*, 142 S. Ct. 46 (2021); *N.*

*Am. Butterfly Ass'n v. Nielsen*, 368 F. Supp. 3d 1 (D.D.C. 2019), *aff'd in part*, 977 F.3d 1244 (D.C. Cir. 2020); *Cnty. of El Paso v. Chertoff*, No. 08-196, 2008 WL 4372693 (W.D. Tex. Aug. 29, 2008), *cert. denied*, 557 U.S. 915 (2009); *Save Our Heritage Org. v. Gonzalez*, 533 F. Supp. 2d 58 (D.D.C. 2008); *Defs. of Wildlife v. Chertoff*, 527 F. Supp. 2d 119(D.D.C. 2007), *cert. denied*, 554 U.S. 918 (2008); *Sierra Club v. Ashcroft*, No. 04-272, 2005 WL 8153059 (S.D. Cal. Dec. 13, 2005); *see also Presidio Mun. Dev. Dist. v. DHS*, No. CV 26-2146 (RBW), 2026 WL 2213850 (D.D.C. Aug. 2, 2026) (denying motion for preliminary injunction).

Relevant to this lawsuit, the Secretary of Homeland Security has issued three additional waivers under the IIRIRA to expedite three barrier construction projects in portions of the Big Bend Sector of south Texas ("Big Bend Waivers").[1]

*Big Bend 2 Project*.

The Big Bend 2 project involves construction of approximately 61 miles of barrier system in Presidio County, Texas. Declaration of Paul Enriquez ¶ 10 (attached as Exhibit A). Plaintiff Angell's property in Redford, Texas, is located within the Big Bend 2 project area. *Id.* ¶ 16. On February 17, 2026, a waiver to facilitate the expeditious construction of barrier system and roads for the Big Bend 2 project was published in the Federal Register (the "Big Bend 2 Waiver"). *Id.* ¶ 18 (citing 91 Fed. Reg. 7297 (Feb. 17, 2026)). "The Big Bend 2 Waiver was executed by then-Secretary Noem pursuant to § 102 of IIRIRA." *Id*. "An amendment to the Big Bend 2 Waiver was signed by Secretary Mullin and published in the Federal Register on July 2, 2026." *Id.* (citing 91 Fed. Reg. 40550 (July 2, 2026)). "This waiver covers barrier system construction in or around Mr. Angell's property in Redford, Texas." *Id.*

[1] The Big Bend 1 and 3 projects are not at issue in this lawsuit.

*Big Bend 4 Project.*

"The Big Bend 4 project area includes portions of the Big Bend Ranch State Park and the Big Bend National Park." Enriquez Decl. ¶ 12. "As part of the Big Bend 4 project, CBP planned to construct approximately 17 miles of non-contiguous vehicle barrier system in strategic locations within Big Bend National Park and east of Big Bend National Park." *Id.* "CBP also planned to construct a new patrol road, improve existing roads, and install technology within Big Bend National Park." *Id.* "No new stadium or LED lighting is planned as part of the Big Bend 4 project in the National Park. There is no barrier planned for construction within Big Bend Ranch State Park." *Id.* "Rather, CBP intends to construct a road with associated technology in portions of the Big Bend Ranch State Park." *Id.*

"A waiver covering the Big Bend 4 project was published in the Federal Register on May 15, 2026 (the "Big Bend 4 Waiver")." *Id.* ¶ 19. (citing 91 Fed. Reg. 27969 (May 15, 2026)). "The Big Bend 4 waiver was executed by Secretary Mullin pursuant to § 102 of IIRIRA." *Id.* "On June 9, 2026, an amendment to the Big Bend 4 waiver, which was executed by Secretary Mullin, was published in the Federal Register." *Id.* (citing 91 Fed. Reg. 34831 (June 9, 2026)). "The amendment to the Big Bend 4 Waiver corrected the project area covered by the original Big Bend 4 Waiver." *Id.* "This waiver covers construction in Big Bend National Park, Big Bend Ranch State Park, and Black Gap Wildlife Management Area." *Id.*

"On August 31, 2026, CBP agreed to pause all ground disturbing activities for the Big Bend 2 and Big Bend 4 projects to allow for additional public engagement." *Id.* ¶ 20. "[F]or the Big Bend 4 project, CBP is actively considering adjustments to the original project based on the input it has received from the National Park Service and other stakeholders." *Id.* at ¶ 35. "CBP expects to make a final decision on the scope of the Big Bend 4 project during the first week of

October." *Id.* "When a final decision is made on the scope of Big Bend 4, CBP will make a public announcement and share relevant information about the project via cbp.gov and local media outlets." *Id.*

*Big Bend 5 Project.*

The Big Bend 5 project will involve construction of "approximately 156 miles of vehicle barrier system in Brewster, Terrell, and Val Verde County, Texas." Enriquez Decl. ¶ 13. "Approximately 100 miles of the vehicle barrier system is within the Big Bend Sector and approximately 56 miles of vehicle barrier system is within the Del Rio Sector." *Id.* "On July 27, 2026, a waiver to facilitate the expeditious construction of barrier system and roads in the Big Bend and Del Rio Sectors for the Big Bend 5 project was published in the Federal Register ("the Big Bend 5 Waiver")." *Id.* ¶ 14. (citing 91 Fed. Reg. 46939 (July 27, 2026)). "The Big Bend 5 Waiver was executed by Secretary Mullin pursuant to § 102 of [IIRIRA]." *Id.*

## III. Procedural History

Plaintiffs filed this complaint on August 28, 2026, ECF No. 1, and have amended it twice since then, ECF Nos. 3, 14. On September 4, 2026, the parties filed a joint advisory notifying the Court that CBP had "paused all ground disturbing activit[ies] for the Big Bend 2 and Big Bend 4 border barrier construction projects until September 30 to allow for public engagement." ECF No. 10. Accordingly, the parties agreed to hold Plaintiffs' motion for temporary restraining order (ECF No. 2) in abeyance and entered a briefing schedule whereby Plaintiffs would file a motion for preliminary injunction by September 16, Defendants would file an opposition to that motion by September 30, and Plaintiffs would file any reply by October 7.

## ARGUMENT

### I. Legal Standard

A preliminary injunction is an "extraordinary remedy." *Concernedapte LLC v. P'ships & Unincorporated Assocs. Identified on Schedule A*, 811 F. Supp. 3d 807, 810 (W.D. Tex. 2025) (citing *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997)); *Whole Woman's Health v. Paxton*, 264 F.Supp.3d 813, 818 (W.D. Tex. 2017). To succeed on a motion for a preliminary injunction, a Plaintiff must establish four factors: "(1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest." *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 452 (5th Cir. 2014) (citation omitted). The plaintiff must "clearly carr[y] the burden of persuasion" on all four elements. *Evans v. Garza*, 161 F.4th 315, 323 (5th Cir. 2025) (citation omitted). If a Plaintiff "fails on the first factor," the Court need "not address the other three." *Future Proof Brands, LLC v. Molson Coors Bev. Co.*, 982 F.3d 280, 289 (5th Cir. 2020).

### II. Plaintiffs lack standing to challenge the July 27, 2026 Waiver.

Plaintiffs' Motion challenges the July 27Waiver that covers construction for the Big Bend 5 project, but Plaintiffs lack standing to do so. To have standing, a "plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[.]" *Moore v. Bryant*, 853 F.3d 245, 248 (5th Cir. 2017) (alteration in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Standing "is not dispensed in gross[,]" and Plaintiffs must establish it "for each

claim [] they press" and "for each form of relief." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (citation omitted).

Here, Plaintiffs challenge the July 27 Waiver as allegedly causing them injuries in the Parks and on Plaintiff Angell's personal property. *See* Mot. at 13-14, 25-28, ECF No. 16. However, the July 27 Waiver does not cover these areas. Instead, the July 27 Waiver covers the Big Bend 5 project, which only includes a portion of the Big Bend Sector and part of the Del Rio Sector. Enriquez Decl. ¶ 13. The July 27 Waiver does not include Big Bend National Park, Big Bend Ranch State Park, or Plaintiff Angell's personal property. *Id* at 17. Rather, Angell's property is located within the Big Bend 2 project area, which is covered by the February 17, 2026 Waiver, as amended on July 2, 2026. *Id.* at ¶ 16. Similarly, the proposed construction in Big Bend National Park and the Big Bend Ranch State Park is part of the Big Bend 4 project, which is covered by the May 15, 2026 Waiver, as amended on June 9, 2026. *Id* at ¶ 19. As Plaintiffs do not allege any injuries from construction in the Big Bend 5 project area associated with the July 27 Waiver, they lack standing to challenge it.

## III. Any Challenge to the Waivers For the Big Bend 2 and 4 Projects is Time Barred.

Plaintiffs' alleged injuries arise from construction associated with the Big Bend 2 and 4 projects, but Plaintiffs' complaint does not challenge the waivers that were issued to expedite construction of those projects. The complaint makes no reference to the February 17, 2026 Waiver, as amended on July 2, 2026, covering the Big Bend 2 project, which includes Plaintiff Angell's personal property. Nor does the complaint reference the May 15, 2026 Waiver, as amended on June 9, 2026, covering the Big Bend 4 project, which includes Big Bend National Park and Big Bend Ranch State Park. Indeed, the complaint expressly states that the only waiver it challenges

is the "Determination of the Secretary pursuant to Section 102 of IIRIRA effective July 27, 2026[.]" 91 Fed. Reg. 46,939[.]" Compl. ¶ 15; *see also* Second Am. Compl. ¶ 15.

Plaintiffs cannot challenge barrier construction associated with the waivers for the Big Bend 2 and 4 projects because those claims are time barred by the statute of limitations in IIRIRA § 102(c)(2)(B). That section, which is titled "Time for Filing of Complaint," provides that any constitutional claim "shall be filed not later than 60 days after the date of the action or decision made by the Secretary of Homeland Security." *Id*. Congress expressly directed that "[a] claim shall be barred unless it is filed within the time specified." *Id.* The amended waiver for the Big Bend 2 project was issued on July 2, 2026, and the amended waiver for the Big Bend 4 project was issued on June 9, 2026. *See* 91 Fed. Reg. 40550 (July 2, 2026); 91 Fed. Reg. 34831 (June 9, 2026). Plaintiffs have not filed a complaint challenging those waivers within the applicable 60-day limitations period, thus any challenge to those projects is "barred." IIRIRA§ 102(c)(2)(B).

Plaintiffs implicitly concede this point in their second amended complaint filed on September 16, 2026. In explaining why that complaint is "timely filed," Plaintiffs state that they have challenged only "the Secretary's Determination" for the Big Bend 5 project that "was published in the Federal Register on July 27, 2026. *See* 91 Fed. Reg. 46,939." Second Am. Compl. ¶ 17. Plaintiffs make no reference to the earlier waivers for the Big Bend 2 and 4 projects, presumably because they recognize that any challenges to those waivers would be barred by the 60-day limitations period.

In sum, while Plaintiffs have brought a timely challenge to the Big Bend 5 Waiver issued on July 27, they cannot establish Article III standing to bring that claim because that wavier does involve construction in any of the locations where Plaintiffs assert injury, namely Big Bend National Park, Big Bend Ranch State Park, or Plaintiff Angell's property. To the extent Plaintiffs

were to attempt to challenge the waivers associated with Big Bend National Park, Big Bend Ranch State Park, or Plaintiff Angell's property, any such claims would fail because they have not been filed within the 60-day period established by Congress.

For these reasons, the Court should deny Plaintiffs' motion for lack of jurisdiction and need not consider the merits of Plaintiffs' claims. Nonetheless, Defendants will respond to each of Plaintiffs' constitutional claims against the July 27 Waiver.

## IV. Plaintiffs are not likely to succeed on the merits of their constitutional claims.

### A. Plaintiffs are not likely to succeed on their nondelegation claim

Plaintiffs stand no likelihood of success on their nondelegation claim. "The Supreme Court has only twice in its history struck down federal laws under the nondelegation doctrine[,]" both of which occurred in 1935. *Nat'l Infusion Ctr. Ass'n v. Kennedy*, 798 F. Supp. 3d 748, 757 (W.D. Tex. 2025), *aff'd*, --- F.4th ---, 2026 WL 2517285 (5th Cir. Aug. 26, 2025).

As the Supreme Court recently emphasized in denying a non-delegation challenge, the "[l]egislative power . . . belongs to the legislative branch, and to no other." *FCC v. Consumers' Rsch.*, 606 U.S. 656, 672 (2025). However, "Congress may seek assistance from its coordinate branches to secure the 'effect intended by its acts of legislation." *Id*. (citation modified). In seeking assistance from other branches of government, Congress may "vest discretion" in Executive Branch "agencies to implement and apply the laws it has enacted." *Id.* (citation modified). So long as Congress sets forth an "intelligible principle" to guide an agency's actions, it effects a lawful grant of discretion rather than an unlawful delegation of legislative power. *Id.* at 673 (citation modified) ("To distinguish between the permissible and the impermissible in this sphere, we have long asked whether Congress has set out an 'intelligible principle' to guide what it has given the agency to do." (citation omitted)).

Plaintiffs' Non-Delegation Doctrine claim fails because the intelligible principle that Congress provided to guide DHS's exercise of delegated discretion in the IIRIRA is well within the bounds provided by existing precedent. *See Big Time Vapes, Inc. v. FDA*, 963 F.3d 436, 442 (5th Cir. 2020) (stating that the Supreme Court has "long defended Congress's ability to delegate power under broad standards" (citation modified)). This conclusion has been repeatedly recognized by every other court that has addressed this same issue, including in this jurisdiction. *See Ctr. for Biological Diversity*, 2026 WL 836278, at *4–5; *Ctr. for Biological Diversity*, 404 F. Supp. 3d at 244-49; *In re Border Infrastructure Env't Litig.*, 284 F. Supp. 3d at 1130-37; *Cnty. of El Paso*, 2008 WL 4372693, at *2-4; *Save Our Heritage*, 533 F. Supp. 2d at 63-64; *Defs. of Wildlife*, 527 F. Supp. 2d at 126-29; *Sierra Club*, 2005 WL 8153059, at *4-7. This Court should reach the same conclusion.

To provide a constitutionally permissible "intelligible principle," Congress need only delineate "both 'the general policy' that the agency must pursue and 'the boundaries of [its] delegated authority.'" *Consumers' Rsch.*, 606 U.S. at 673 (alteration in original) (quoting *Am. Power & Light Co. v. Secs. Exch. Comm'n*, 329 U.S. 90, 105 (1946)). That standard is easily met here.

Congress established a general policy in the IIRIRA. Section 102(a) delineates a general policy of "install[ing] additional physical barriers and roads" to "deter illegal crossings in areas of high illegal entry into the United States[,]" which section 102(c) incorporates by tying the waiver authority to "expeditious construction of the barriers and roads under this section." This establishes a policy to guide the Secretary: that improving border protection by expediting the construction of necessary barriers and roads is a critical Congressional priority. *See, e.g.*, *Ctr. for Biological Diversity*, 2026 WL 836278, at *4 (finding that "§ 102(c) is sufficiently guided by the general

policy outlined in the §102(a)"); *Defs. of Wildlife*, 527 F. Supp. 2d at 127 (finding a clearly delineated general policy "to expeditiously 'install additional physical barriers and roads to deter illegal crossings in areas of high illegal entry'" (citation modified)).

Congress also set meaningful boundaries on the Secretary's delegated authority. The IIRIRA sets two boundaries on the Secretary's authority: a geographic one and a temporal one. Waivers may only be issued in connection with construction "in the vicinity of the United States border." IIRIRA § 102(a) (incorporated by the "under this section" cross-reference). The second boundary is temporal necessity. Waivers may only be issued when "necessary to ensure expeditious construction" at those locations. *Id.* § 102(c); *see Defs. of Wildlife*, 527 F. Supp. 2d at 127 (concluding that Congress provided a sufficient boundary by instructing that "the Secretary may waive only those laws that he determines 'necessary to ensure expeditious construction'" (citation omitted)); *Ctr. for Biological Diversity*, 404 F. Supp. 3d at 248 (finding a guiding principle in the "narrow purpose" of "expeditious completion of [] border fences" (citation omitted)). As then-Judge Jackson concluded, "from the standpoint of what suffices as guidance from Congress regarding how the Executive Branch is to exercise the authority granted in the statute for constitutional purposes, what is set forth in subsections 102(a) and 102(c) is enough." *Ctr. for Biological Diversity*, 404 F. Supp. 3d at 249.

Plaintiffs' contrary arguments lack merit. As an initial matter, Plaintiffs misread IIRIRA §102(c). Plaintiffs claim that that section allows the Secretary to "engage in 'amending this section.'" Mot. at 15. But IIRIRA §102(c) does not include any language regarding amendments. To the extent Plaintiffs quote this language, it appears that they refer to the Legal Information Institute's text of the IIRIRA, which includes, in editorial brackets, "amending this section." *See*, Legal Information Institute, 8 U.S. Code § 1103 - Powers and duties of the Secretary, the Under

Secretary, and the Attorney General, https://perma.cc/8VYD-3HEP. However, as the brackets indicate, such language is an editorial note, not a part of the statute enacted and amended by Congress. *See* Dep't of Homeland Security Appropriations Act, 2008, Pub. L. No. 110-161, Div. E, Title V § 564, 121 Stat. 2090 (2007); Secure Fence Act of 2006, Pub. L. No. 109-367, § 3, 120 Stat. 2638; REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, Title I §102, 119 Stat. 231, 302, 306.

Plaintiffs next claim that the delegation is "self-consuming" because the Secretary's waiver authority would purportedly allow him to waive other sections of the IIRIRA. Mot. at 16. But the Secretary has never claimed to waive portions of the IIRIRA. Allowing the Secretary to waive the very portions of the statute that guide his waivers would break the structured delegation that Congress intended, and "[i]t is an elementary rule of construction that 'the act cannot be held to destroy itself.'" *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 20 (1995) (quoting *Tex. & Pac. Ry. Co. v. Abilene Cotton Oil Co*., 204 U.S. 426, 446 (1907)); *see also Pugin v. Garland*, 599 U.S. 600, 607 (2023) ("We should not lightly conclude that Congress enacted a self-defeating statute.") (quoting *Quarles v. United States*, 587 U.S. 645, 654 (2019)).

Finally, Plaintiffs claim that the waiver provision delegates to the Secretary the power to "enact, amend or repeal statutes." Mot. at 17.[2] Not so. Waiver of a legal requirement for a specific purpose is not amendment or repeal of a statute. Every court to consider such a challenge has

[2] This claim would be better brought as a Presentment Clauses claim, as the Supreme Court has explicitly addressed this question in the Presentment Clauses context. In fact, Plaintiffs cite *Clinton*, which was primarily a Presentment Clauses case. *See Clinton v. City of New York*, 524 U.S. 417, 421 (1998) ("the cancellation procedures set forth in the Act violate the Presentment Clause."). Any such claim would lack merit, however, as multiple courts have dismissed Presentment Clause challenges to IIRIRA's waiver provision. *See Cnty. of El Paso,* 2008 WL 4372693, at *6-7; *Ctr. For Biological Diversity,* 2026 WL 836278, at *5-6*; Ctr. For Biological Diversity,* 404 F. Supp. 3d at 246-47*; Defs. of Wildlife,* 527 F. Supp. 2d at 123-26.

rejected it, including in this jurisdiction. *See Cnty. of El Paso*, 2008 WL 4372693, at *6-7; *see also*, *Ctr. for Biological Diversity*, 2026 WL 836278, at *5-6; *Ctr. for Biological Diversity*, 404 F. Supp. 3d at 246-47; *Defs. of Wildlife*, 527 F. Supp. 2d at 123-26.

Under a section 102(c) waiver, the waived statutes are inapplicable only with respect to the construction of barriers and roads along the relevant portion of the border. The statutes retain their general legal force and effect because the Secretary's waiver extends to only a tiny fraction of the universe of cases to which any waived laws apply. As then-Judge Jackson found in *Center for Biological Diversity*:

> "under the IIRIRA's waiver provision, '[t]he Secretary has no authority to alter the text of any statute, repeal any law, or cancel any statutory provision, in whole or in part.' . . . [T]o assert otherwise would effectively transform *any* Executive Branch waiver (the U.S. Code contains 'myriad examples' of such) into a violation of Article I, 'no matter how limited in scope.'"

404 F. Supp. 3d at 246 (quoting *Defs. of Wildlife*, 527 F. Supp. 2d at 123-25).

Other courts have rejected similar arguments against waiver provisions. *See Republic of Iraq v. Beaty,* 556 U.S. 848, 861 (2009) ("The [statutory] proviso *expressly* allow[ing] the President to render certain statutes inapplicable . . . did not repeal anything, but merely granted the President authority to waive the application of particular statutes to a single foreign nation."); *Acree v. Republic of Iraq*, 370 F.3d 41, 64 & n.3 (D.C. Cir. 2004) (Roberts, J., concurring) (dismissing constitutional challenge to statute permitting President to make inapplicable to Iraq "any other provision of law that applies to countries that have supported terrorism" because the authorized actions "are a far cry from the line-item veto at issue in *Clinton*, and are instead akin to the waivers that the President is routinely empowered to make in other areas, particularly in the realm of foreign [policy]"); *In re Nat'l Sec. Agency Telecomms. Recs. Litig. v. AT&T Corp.*, 671 F.3d 881,

895 (9th Cir. 2011) (rejecting Presentment Clause challenge to an "executive grant of immunity or waiver of claim," on the ground that it "has never been recognized as a form of legislative repeal").

Here, similarly, the § 102(c) authority in one statute granting authority to waive application of one or more other statutes is not uncommon. *See Defs. of Wildlife*, 527 F. Supp. 2d at 125 & n.5 (collecting some of the "myriad examples of waiver provisions in federal statutes"); *see also, e.g.*, 25 U.S.C. § 3406(d) (authorizing Secretary of each Federal agency providing funds for program to waive "any [] statutory . . . requirement, regulation, policy, or procedure promulgated by [that] agency"); Deficit Reduction Act of 2005, Pub. L. No. 109-171, § 5107(a)(2), 120 Stat. 4, 42 (2006) (providing for waiver of "such provisions of law . . . as are necessary to implement [specified statutory provision] on a timely basis").

Nor does section 102(c) raise the same separation of powers concerns that were at issue in *Clinton*. There, the Supreme Court was concerned that the President's line-item veto was "rejecting the policy judgment made by Congress and relying on his own policy judgment." 524 U.S. at 444. But here, Congress unmistakably expressed its policy judgment that construction of the barriers and roads along the border was of such importance that it justified waiving application of environmental and other laws to the extent those laws threaten expeditious construction. *See* IIRIRA § 102(c)(1). Thus, in sharp contrast to *Clinton*, there is no question that the Secretary is executing (rather than rejecting) the will of Congress. *Cf. Smith v. Fed. Rsrv. Bank of N.Y.*, 280 F. Supp. 2d 314, 324 (S.D.N.Y. 2003) (upholding waiver where "[u]nlike in *Clinton*" the President "is carrying out, not rejecting, a policy made by Congress"), *aff'd*, 346 F.3d 264 (2d Cir. 2003).

**B. Plaintiffs are not likely to succeed on their Separation of Powers Claim.**

Plaintiffs next claim that the IIRIRA violates the Separation of Powers by concentrating legislative, executive, and judicial power in the hands of the Secretary. Mot. at 17. Regarding any

alleged legislative power to waive, amend, or enact laws, Defendants have adequately addressed such claims in their Non-Delegation section. *Supra,* at 12-17. Plaintiffs cannot repackage their Non-Delegation claim under the label of the Separation of Powers. *Cf. Mistretta v. United States*, 488 U.S. 361, 371 (1989) ("The nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of Government.")

As to Plaintiffs' claim that the Secretary has issued "an executive-made rule of decision" which infringes on the Legislative's authority, it is unclear what rule Plaintiffs refer to. The only action that the Secretary took in the July 27 Waiver was to waive certain laws in furtherance of border barrier construction. Plaintiffs claim the Secretary "defined the relevant project geography" and "declared [it] an area of high illegal entry," but such power is clearly granted in the IIRIRA. Mot. at 18. And even so, Congress created the primary "rule of decision" when it commanded the Secretary to "take such actions as may be necessary to install additional physical barriers and roads . . . in the vicinity of the United States border." IIRIRA §102(a). The Secretary merely followed this command by issuing the waiver. Plaintiffs fail to show such actions equate to legislation or infringe upon the Separation of Powers.

As to any impediments to judicial review, the Secretary is powerless to make such determinations. Defendants claim that the Secretary "narrow[ed] the courts' role" and "barr[ed] ordinary judicial review," whereas it was Congress that narrowed jurisdiction. Mot. at 18-19. IIRIRA §102(c)(2), and hence Congress, limits the Court's jurisdiction to constitutional claims and limits appeals to petitions for writ of certiorari, not the Secretary. In any case, Congress has authority to issue such jurisdiction stripping provisions. *See, e.g. Patchak v. Zinke*, 583 U.S. 244, 253 (2018) ("Congress generally does not violate Article III when it strips federal jurisdiction over a class of cases.").

**C. Plaintiffs are not likely to succeed on their Take Care Clause claim.**

The Constitution requires that the President "shall take Care that the Laws be faithfully executed[.]" U.S. Const. art. II, § 3. But Plaintiffs have not sued the President, and the Take Care Clause provides no basis to review the actions of subordinate Executive Branch officials. The Clause speaks only to the President, not to his subordinates, and ensures that the President is principally responsible for the actions of the Executive Branch and directly accountable to the people through the political process. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 492-93 (2010) ("It is *his* responsibility to take care that the laws be faithfully executed."). Further, the Take Care Clause does not provide Plaintiffs with a private right of action. *See, e.g.*, *Florida v. United States*, 660 F. Supp. 3d 1239, 1283 (N.D. Fla. 2023); *Las Ams. Immigrant Advoc. Ctr. v. Biden*, 571 F. Supp. 3d 1173, 1180 (D. Or. 2021) (collecting cases); *Brnovich v. Biden*, 630 F. Supp. 3d 1157, 1178 (D. Ariz. 2022).

Even if Plaintiffs could surmount these threshold issues, their claim rests on a faulty predicate. They claim that by combining the Del Rio and Big Bend Sectors, the Secretary manipulated figures to make the Big Bend Sector an area of high illegal entry. Mot. at 19. But as stated above, *supra* at 9-10, those sectors were only combined in the July 27 Waiver, and that waiver only includes a small portion of the Big Bend Sector. The remainder of the Big Bend Sector was covered by the February 17 and May 15 Waivers.

Even so, Plaintiffs are wrong that the Secretary has failed to faithfully execute the phrase "areas of high illegal entry." *Id*. at 19. If anything, the phrase is a limitation, not a command, whereby the Secretary may only execute waivers for areas of high illegal entry. And the Secretary faithfully adhered to that statutory requirement by making the appropriate findings in the waivers

that the Big Bend and Del Rio Sectors are areas of high illegal entry.[3] But even if it is a command, it is part of the broader command in the IIRIRA to build border barriers and roads, and the Waiver is certainly a faithful execution of that command. Put another way, "the challenged steps taken by the Secretary are ones that are plausibly called for by an act of Congress[.]" *In re Border Infrastructure Env't Litig.*, 284 F. Supp. 3d at 1139. Thus, the Executive obeying a Congressional mandate by exercising waiver authority expressly granted under a statute is fully in line with its obligation to faithfully execute the laws. *See Ctr. for Biological Diversity*, 404 F. Supp. 3d at 249-50 (rejecting Take Care challenge to IIRIRA waiver provision).

**D. Plaintiffs are unlikely to succeed on their Major Questions Doctrine claim.**

Plaintiffs are also unlikely to succeed on their Major Questions Doctrine claim. As an initial matter, the Court lacks jurisdiction to hear such a claim under the IIRIRA. The IIRIRA limits challenges to the waiver authority to claims "alleging a violation of the Constitution of the United States." IIRIRA § 102(c)(2)(A). The Major Questions Doctrine, however, is a tool or rule of statutory interpretation. *See Mayfield v. U.S. Dep't of Lab.*, 117 F.4th 611, 616 (5th Cir. 2024) (stating that the Major Questions Doctrine is either an "interpretive tool" or a "clear-statement rule"). While the Doctrine is animated by background constitutional principles, such as the Separation of Powers, *see*, *e.g.*, *West Virginia v. EPA*, 597 U.S. 697, 723 (2022), that does not transform it into a "violation of the Constitution" itself. Indeed, many interpretative canons are informed by constitutional values, *Biden v. Nebraska*, 600 U.S. 477, 508 (2023) (Barrett, J., concurring), but they ultimately remain rules of construction and interpretative tools to determine

---

[3] Plaintiffs cannot challenge that factual determination because it is "not a violation of the Constitution of the United States." IIRIRA § 102(c)2).

the best reading of a statute's text. *Id.* at 511 (explaining that "the doctrine serves as an interpretive tool").

*Nebraska* illustrates this point, as the Supreme Court held that the HEROES Act does not grant the Secretary of Education "the authority to cancel $430 billion of student loan principal." *Id.* at 494. The Court did not find that the HEROES Act was a violation of the Constitution; instead, it relied on the Major Questions Doctrine as an interpretive tool to determine the meaning of the statute. Here, to the extent Plaintiffs contend Congress's delegation of authority to DHS in the IIRIRA exceeds constitutional limits, the non-delegation and Presentment Clauses are the appropriate sources of law to address those claims. The Major Questions Doctrine, however, is not a "violation of the Constitution" within the meaning of the IIRIRA, thus the Court lacks jurisdiction to address this claim.

Even if the Court had jurisdiction, Plaintiffs' Major Questions claim fails on the merits. The major questions doctrine only applies in "extraordinary cases" involving assertions of "vast economic and political significance" or "extravagant statutory power over the national economy." *West Virginia*, 597 U.S. at 716, 722-24 (citations omitted). In such cases, "the Government claimed broad, expansive power on an uncertain statutory basis" where "the statutory text might '[a]s a matter of definitional possibilities' have been read to delegate the asserted power." *Learning Res., Inc. v. Trump*, 607 U.S. 229, 242-43 (2026) (alteration in original) (quoting *West Virginia*, 597 U.S. at 732). A hallmark of the Major Questions Doctrine is the assertion of "an unheralded power representing a transformative expansion . . . [in an agency's] regulatory authority" by means of "a radical or fundamental change to a statutory scheme." *West Virginia*, 597 U.S. at 700, 722-25 (citation omitted) (agency "located [a] newfound power in the vague language of an ancillary provision of the Act" (citation modified)); *see also Nebraska,* 600 U.S. at 501-02 (agency

exercised "never previously claimed powers"). As recently summarized by the Fifth Circuit, the "major-questions doctrine bars agencies from exploiting ambiguous statutes to grant themselves broad new powers." *Tex. Tobacco Barn, L.L.C. v. U.S. Dep't of Health & Hum. Servs.*, 180 F.4th 229, 233 (5th Cir. 2026).

Here, the Major Questions Doctrine does not apply because Congress has unequivocally authorized DHS to construct barriers along the southern border. IIRIRA § 102(a) directs DHS to "take such actions as may be necessary to install additional physical barriers and roads . . . in the vicinity of the United States border to deter illegal crossings in areas of high illegal entry into the United States." Further, section 102(b) mandates that DHS "construct reinforced fencing along not less than 700 miles of the southwest border." *Id.* § 102(b)(1)(A). As discussed above, Congress previously authorized border barrier construction in specific geographic areas, but Congress amended the statute in 2006 to remove those limitations. Congress therefore expanded DHS's authority to build barriers where they "would be most practical and effective" with the goal "to gain operational control of the southwest border." Pub. L. No. 110-161, div. E, tit. V § 564.

Similarly, Congress unambiguously gave the DHS Secretary statutory authority to waive any legal requirement necessary to ensure expeditious construction of border barriers. Section 102(c) expressly provides that the DHS Secretary "shall have the authority to waive all legal requirements such Secretary, in such Secretary's sole discretion, determines necessary to ensure expeditious construction of the barriers and roads under this section." Congress initially limited this authority to cover only the ESA and NEPA, but the REAL ID Act expanded it to its current breadth in 2006 after Congress grew frustrated by "[c]ontinued delays caused by litigation" preventing barrier construction. *See* H.R. Rep. No. 109-72, at 171.

Accordingly, this is not a situation where DHS recently discovered "unintentional" or "oblique" statutory language to authorize a major policy change, *Nat'l Fed'n of Indep. Bus. (NFIB) v. Occupational Safety & Health Admin. (OSHA)*, 595 U.S. 109, 125 (2022) (Gorsuch, J., concurring), nor is DHS claiming "broad, expansive power on an uncertain statutory basis," *Learning Res., Inc.*, 607 U.S. at 242. The clear statutory authorization to build border barriers and waive laws to expedite such construction bears little resemblance to the cases where the Supreme Court has limited the reach of statutory authority under the Major Questions Doctrine. *See id.* (summarizing cases).

Further, this case is not remotely close to other contexts where courts have determined that the agency is acting "outside its wheelhouse," *Nebraska,* 600 U.S. at 518 (Barrett, J., concurring), or lacks "comparative expertise in making [the relevant] policy judgments," *West Virginia,* 597 U.S. at 748 (citation omitted). There is nothing novel or extraordinary about the Big Bend Waivers. They waive certain laws exclusively for the purpose of expediting construction along the border. Such waiver authority has been exercised for over two decades without a single court ever declaring it illegal. *See supra*, at 5-6. This long history of transparent agency action within the DHS's field of expertise contrasts sharply with cases where the Supreme Court has rejected novel claims of agency authority under the Major Questions Doctrine, such as the CDC imposing an eviction moratorium or OSHA imposing COVID vaccine test requirements. *See Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758 (2021) (per curiam); *NFIB*, 595 U.S. at 113 (per curiam).[4]

[4] To the extent Plaintiffs' claim raises issues of an "extraordinary delegation" or an "unconstitutional delegation," Mot. at 21, those arguments were sufficiently addressed in Defendants' section on the Non-Delegation Doctrine, *supra,* at 12-17.

**E. Plaintiffs are unlikely to succeed on their procedural due process claim.**

"The Due Process Clause of the Fifth Amendment guarantees that '[n]o person shall . . . be deprived of life, liberty, or property, without due process of law.'" *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 48 (1993) (citation modified). "Procedural due process considers not the justice of a deprivation, but only the means by which the deprivation was effected." *Caine v. Hardy*, 943 F.2d 1406, 1411 (5th Cir. 1991). Such claims are analyzed in two steps: "the first [step] asks whether there exists a liberty or property interest which has been interfered with by the [government]." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). If so, the second step of the analysis "examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Id.* Plaintiffs are unlikely to succeed at either step of the analysis.

When deciding a procedural due process challenge, "[t]he first inquiry . . . is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). Here, Defendants have not deprived Plaintiff Angell of any protected property interest. All of the government's actions in relation to Plaintiff Angell's property have been merely preliminary discussions regarding potential takings that might occur in the future. *See* Declaration of Garrett Gohlke ¶¶ 7-15 (attached as Exhibit B). No taking has occurred, thus Plaintiffs have not been deprived of any protected property interest within the meaning of the due process clause.[5]

[5] To the extent Plaintiffs claim loss of access to "trails at the Big Bend national Park, and Big Bend Ranch State Park, and Boat-launch functionality," Mot. at 22, Plaintiffs cannot allege a taking of public property. *See* U.S. Const. amend. V (". . . nor shall private property be taken for public use, without just compensation.").

Even so, the government has followed appropriate procedures in attempting to acquire a portion of Plaintiff Angell's property. In a typical land acquisition case for border infrastructure, CBP first determines the location of the infrastructure and provides that information to the United States Army Corps of Engineers ("USACE"). Gohlke Decl. ¶ 1. USACE then determines who owns the property and sends a mailing to the owner requesting a Right of Entry or Right of Survey, *Id*. at ¶¶ 2, 3. A USACE realty specialist would then attempt to contact the owner to discuss the acquisition. *Id*. at ¶ 4. If the owner is willing to sign either agreement, he may simply sign and mail it back to USACE. *Id.* at ¶ 5. If not, USACE attempts to address any concerns or questions and potentially modifies the agreement. *Id*. If the parties are still at an impasse after these discussions, USACE may refer the matter to the Department of Justice for condemnation proceedings. *Id*. at ¶ 6.

The government has followed these procedures in regard to Plaintiff Angell's property. USACE sent Plaintiff Angell an initial mailing with a request for right-of-entry on February 20, 2026. *Id*. at ¶ 8. USACE then communicated with Plaintiff Angell through email, text, and phone for approximately three months. *Id*. at ¶¶ 9-15. Those contacts included two in-person meetings wherein Plaintiff Angell expressed his concerns with the project and USACE attempted to answer and address those concerns. *Id*. at ¶¶ 13, 15 Since May 2026, USACE has not had any contact with Plaintiffs, nor has USACE referred the property to the Department of Justice for condemnation proceedings. *Id*. at ¶¶ 16-17. Accordingly, there has not been a taking or deprivation of Plaintiff Angell's property under the Due Process clause.

Even if there were to be a taking of the property, Plaintiffs' Due Process Clause claims fail because Congress has created adequate post-deprivation remedies for the harms they allege. "[T]he negligent or intentional deprivation of property through the random and unauthorized acts of a

state or federal employee does not constitute a deprivation of due process if 'a meaningful postdeprivation remedy for the loss is available.'" *Stuto v. Fleishman*, 164 F.3d 820, 825 (2d Cir. 1999) (citation omitted); *accord Allen v. Cooper*, 589 U.S. 248, 262 (2020) (the government "cannot violate that Clause unless it fails to offer an adequate remedy for an infringement, because such a remedy itself satisfies the demand of 'due process.'" (citing *Hudson v. Palmer*, 468 U.S. 517, 533) (1984)); *Hudson*, 468 U.S. at 539 (O'Connor, J., concurring) ("The due process requirement means that Government must provide to the [plaintiff] the remedies it promised would be available." (citing *Parratt v. Taylor*, 451 U.S. 527, 537–544 (1981)).

An adequate post deprivation remedy exists for Plaintiff Angell in an inverse condemnation proceeding in the Court of Federal Claims.[6] An inverse condemnation action for just compensation is the remedy for a physical taking by the government. *See Presley v. City of Charlottesville*, 464 F.3d 480, 489-91 (4th Cir. 2006) (describing an inverse condemnation action as "all the process to which [the plaintiff] is due"). Under longstanding precedent, the government need not provide notice or a hearing before a physical taking for public use. *Id.* (citing *Bragg v. Weaver*, 251 U.S. 57, 58 (1919); *Joslin Mfg. Co. v. City of Providence*, 262 U.S. 668, 670, 678, (1923); *Schroeder v. City of New York*, 371 U.S. 208, 212–13 (1962)). "Rather, when the alleged deprivation is effectively a physical taking, procedural due process is satisfied so long as private property owners may pursue meaningful postdeprivation procedures to recover just compensation." *Presley* 464 F.3d at 489–91 (citing *Bailey v. Anderson*, 326 U.S. 203, 205 (1945)); *Fulcher v. United States*, 632 F.2d 278, 291 (4th Cir. 1980) (en banc) (Phillips, J., concurring)). Thus, Plaintiff Angell's sole remedy is through a claim for just compensation in the Court of Federal Claims under the Tucker

[6] If Plaintiffs seek less than $10,000 in compensation, the District Court and the Court of Federal Claims would have concurrent jurisdiction. 28 U.S.C. § 1346(a)(2).

Act, 28 U.S.C. § 1491(a)(1). *See Liberty Mut. Ins. Co. v. La. Dep't of Ins.*, 62 F.3d 115, 118 (5th Cir.1995) (holding that "procedural due process claim fails because Liberty Mutual has not demonstrated that Louisiana does not offer a post-deprivation remedy").

**F. Plaintiffs are not likely to succeed on their cumulative due process claim.**

Plaintiffs are also not likely to succeed on their cumulative due process claim. At the outset, it is not entirely clear what Plaintiffs are referring to by the term "cumulative due process." Mot. at 23. The Fifth Circuit appears to have a doctrine known as the "cumulative error theory" whereby "federal habeas relief may issue if a defendant was denied fourteenth amendment due process by the cumulative effect of errors committed in a state trial, which together deny fundamental fairness," but that would be inapplicable here as this is not a state proceeding or an action seeking habeas relief. *Derden v. McNeel*, 978 F.2d 1453, 1456 (5th Cir. 1992). Other than in that limited circumstance, there is no authority for Plaintiffs to lump together disparate statutory provisions that would otherwise be constitutional to create a so-called "cumulative due process" claim. The absence of any case recognizing this novel theory establishes that Plaintiffs have no likelihood of success.

Nevertheless, Plaintiffs appear to challenge three provisions of the IIRIRA: (1) the provision excluding non-constitutional claims, (2) the 60-day window to challenge waivers, and (3) the limit of appeals to petitions of certiorari to the Supreme Court. These provisions have all been upheld by federal courts. *See, e.g.*, *Ctr. for Biological Diversity*, 404 F. Supp.3d at 235 (precluding non-constitutional causes of action); *In re Border Infrastructure Env't Litig.*, 284 F.Supp.3d at 1142 n. 31 (same); *Save Our Heritage*, 533 F.Supp.2d at 62 (D.D.C. 2008) (dismissing case because, among other reasons, Plaintiffs did not file their challenge to an IIRIRA waiver within 60 days); *N. Am. Butterfly Ass'n v. Wolf*, 977 F.3d 1244, 1259-60 (D.C. Cir. 2020)

(affirming that the IIRIRA limits appeals "arising from" waiver determinations to the Supreme Court). Regardless, such jurisdiction-stripping provisions are well within Congressional authority. *See supra*, at 18. Nothing about these entirely lawful provisions becomes unconstitutional simply because Plaintiffs choose to characterize them in a "cumulative" fashion.

**G. Plaintiffs are not likely to succeed on their Takings Clause Claim**

Plaintiffs claim that the Secretary is without authority under the Takings Clause to acquire Plaintiff Angell's property because the Big Bend Sector is not an area of high illegal entry. Mot. at 24. This claim fails for three reasons. First, as stated above, there has been no taking of Plaintiff's property. "A taking occurs when the government uses its power of eminent domain to condemn property, physically takes possession of property without acquiring title to it, when it occupies property, or when it imposes regulations that restrict an owner's ability to use his property." *Munajj v. City of Fredericksburg*, No. 1:24-CV-1343-RP, 2025 WL 1879606 at *3 (W.D. Tex. June 11, 2025) (citing *Cedar Point Nursery v. Hassid*, 592 U.S. 139, 147-49 (2021)), *aff'd,* No. 25-50535, 2026 WL 897005 (5th Cir. Apr. 1, 2026). As none of these scenarios have occurred, the Takings Clause does not apply in this case.

Second, Plaintiffs couch their claim in constitutional language, but in reality it is a statutory claim. Plaintiffs essentially claim that the Secretary acted contrary to the text of the IIRIRA by declaring the Big Bend Sector an area of high illegal entry. But the Court is without jurisdiction to hear such a claim, as the IIRIRA limits challenges to constitutional claims. IIRIRA §102(c)(2)(A).

Finally, Plaintiffs claim that the "Declaration of Taking" fails to provide just compensation. Mot. at 24. But the Plaintiffs have not included any such "Declaration of Taking" as an attachment to their motion. In fact, Plaintiffs could not have received any such "declaration of taking," as that document is not provided to landowners but rather is a document prepared in accordance with 40

U.S.C. § 3114. Plaintiffs included a letter dated February 20, 2026, but that letter, by its own language, "is not a purchase, lease, or easement offer or agreement." Mot. Ex. A-7, ECF No. 16-1. Rather, the letter was "intended solely as an initial notification of interest and to open communication." *Id*. As such, Plaintiffs fail to establish that there has been a taking or lack of just compensation.

As to Plaintiffs' "Appropriations Clause theory," Plaintiffs claim a violation because the IIRIRA is unconstitutional and does not authorize construction in the Big Bend Sector. Mot. at 24. As argued above, however, the IIRIRA is constitutional, as Courts have held for over two decades. And as also noted above, any claims that the Secretary is violating the IIRIRA by building in the Big Bend Sector are statutory claims that the Court lacks jurisdiction to hear.

Because Plaintiffs have failed to establish a likelihood of success on the merits of any of their constitutional claims, the Court should deny the motion on this basis alone without consideration of the other factors. *See Future Proof Brands, LLC*, 982 F.3d at 289.

## V. Plaintiffs have failed to establish irreparable harm, and the balance of equities and public interest weigh against a preliminary injunction.

The Court should also deny Plaintiffs' request for a preliminary injunction because Plaintiffs have failed to establish irreparable harm, and the balance of equities and public interest favor Defendants. Longstanding principles of equity dictate that the Court should deny Plaintiffs' motion for extraordinary relief because the compelling interests of the federal government in securing the southwest border greatly outweigh the speculative harm that the projects may cause Plaintiffs, especially when the government's mitigation efforts are considered. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (reversing injunction prohibiting the Navy from using sonar technology when balanced against alleged environmental injury).

The Supreme Court applied these principles to border barrier construction in *Trump v. Sierra Club*, 588 U.S. 930 (2019). There, the Supreme Court stayed an injunction prohibiting construction of various border barrier construction projects. In issuing the stay, the Supreme Court necessarily determined that the harm to the government from an injunction prohibiting border barrier construction outweighed the environmental interests advanced by the plaintiffs. *See id.* at 930 ("Among the reasons [for the stay] is that the government has made a sufficient showing . . . that the plaintiffs have no cause of action.") (emphasis added); s*ee La Posta Band of Dieguено Mission Indians v. Trump*, No. 3:20-cv-01552-AJB-MSB, 2020 WL 14042584, at *20 (S.D. Cal. Sept. 9, 2020) (stating that "the Supreme Court has already balanced the harm to the Government from an injunction prohibiting border barrier construction against the irreparable environmental interest of the Sierra Club"). Indeed, since the Supreme Court issued this decision, courts in this Circuit have either denied or stayed injunctions prohibiting construction of border barrier projects. *See* Order, *El Paso Cnty v. Trump*, No. 19-51144 (5th Cir. Jan. 8, 2020); *El Paso Cnty., Texas v. Trump*, 407 F. Supp. 3d 655, 665 (W.D. Tex. 2019).

The environmental, commercial, cultural, and property interests that Plaintiffs assert in this case are similar to those advanced by the plaintiffs in *Winter* and *Sierra Club*, and the balance of equities similarly favors Defendants here. Taken as a whole, Plaintiffs' allegations of harm are speculative and cannot support the issuance of a preliminary injunction, particularly when weighed against the federal government's acute need to secure the Southwest border. *See Manzanita Band of Kumeyaay Nation v. Wolf*, 496 F. Supp. 3d 257, 263 (D.D.C. 2020) (denying motion for emergency injunction to stop border wall construction because Indian Tribe failed "to make out a certain, great, and imminent injury in the absence of a

preliminary injunction"); *La Posta*, 2020 WL 14042584, at *19-20 (finding equitable factors did not favor issuing an injunction stopping border wall construction).

**A. An injunction will impose substantial and irreparable harm on the United States.**

Enjoining the projects in the Big Bend Sector would compromise the government's "weighty" interests in border security, enforcing the immigration laws, and preventing the influx of narcotics into the interior. *See Landon v. Plasencia*, 459 U.S. 21, 34 (1982) ("The government's interest in efficient administration of the immigration laws at the border . . . is weighty."); *Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 672 (1989) (recognizing that the government has "compelling interests in safety and in the integrity of our borders"). *United States v. Merkt*, 794 F.2d 950, 956 (5th Cir. 1986) ("[T]here is a compelling state interest in the government's uniform enforcement of border control laws."). The government's compelling interest is even stronger in the current context because of the "unprecedented flood of illegal immigration" that has occurred over the past several years. Protecting the American People Against Invasion, Exec. Order No. 14159, 90 Fed. Reg. 8443, 8443 (Jan. 20, 2025). As the President has recognized, "[m]illions of illegal aliens crossed our borders . . . and allowed to settle in American communities, in violation of longstanding Federal laws." *Id*.

This massive increase in illegal immigration has imposed significant harms on the general public. The recent influx has "cost taxpayers billions of dollars at the Federal, State, and local levels." *Id*. "Deadly narcotics and other illicit materials have flowed across the border[.]" Securing Our Borders, Exec. Order No. 14165, 90 Fed. Reg. 8467, 8467 (Jan. 20, 2025); see also *Hernandez v. Mesa*, 589 U.S. 93, 107 (2020) ("During the last fiscal year, approximately 850,000 persons were apprehended attempting to enter the United States illegally from Mexico, and large quantities of drugs were smuggled across the border"). "Foreign criminal gangs and cartels" have extended

their influence beyond the southern border into American cities. Declaring a National Emergency at the S. Border of the United States, Proclamation No. 10886, 90 Fed. Reg. 8327, 8327 (Jan. 20, 2025). "Many of these aliens unlawfully within the United States present significant threats to national security and public safety," thus the government must take appropriate action to "protect[] the American people by faithfully executing the immigration laws of the United States." Exec. Order No. 14159, 90 Fed. Reg. at 8443; see also Exec. Order No. 14165, 90 Fed. Reg. at 8467; Proclamation No. 10866, 90 Fed. Reg. at 8327.

Border barriers are an extremely effective tool for deterring and impeding illegal crossings into the United States and protecting Border Patrol officers. Physical barriers are an essential component to the CBP's layered border security approach and provide numerous benefits including: (1) protecting Border Patrol agents, (2) assisting Border Patrol in gaining and maintaining operational control of the border, and (3) supporting a safe and secure border community. Enriquez Decl. ¶ 6. Border barriers also allow USBP agents to gain more control and situational awareness in the area near the U.S.-Mexico border. In short, barriers deter and impede smugglers and aliens from entering the U.S. illegally and increase the effectiveness of Border Patrol agents. *Id.* Accordingly, an injunction thwarting the border barrier system projects would cause irreparable harm to the United States.

Plaintiffs retort that the Big Bend Sector "has the lowest apprehension rate on the southern border" and existing infrastructure is "sufficient for Border Patrol operations." Mot. at 29. Respectfully, Plaintiffs are in no position to determine what infrastructure is sufficient for Border Patrol operations. Nevertheless, this argument ignores the historical need for border security in this Sector. *See* 91 Fed. Reg. at 7298. During fiscal years 2021 and 2022, unlawful entries spiked to record highs of over 30,000 annual encounters. *See* DHS Border Security Report - Fourth

Quarter, Fiscal Year 2023 (January 9, 2025) (page 46, Appendix C, Table B1) (attached as Exhibit 2). And while such encounters have decreased in recent years, such decreases do not negate Congress's mandate for DHS to "achieve *and maintain* operational control" of the international land border, which Congress defined as the prevention of all unlawful entries into the United States. *See* Pub. L. No. 109-367, § 2, 120 Stat. 2638 (8 U.S.C. 1701 note) (emphasis added). Additionally, drug apprehensions have actually increased in recent months. *See* U.S. Customs and Border Protection, Nationwide Drug Seizures. https://www.cbp.gov/document/stats/nationwide-drug-seizures (last visited August 21, 2026).

**B. The United States' interests decisively outweigh Plaintiffs' speculative harms.**

Defendants' compelling interests "plainly outweigh[]" Plaintiffs' asserted injuries. *Winter*, 555 U.S. at 26, 33. As an initial matter, any environmental harms claimed by Plaintiffs have been overruled by Congress. In enacting IIRIRA, Congress stated an explicit preference for "expeditious construction" of border infrastructure over the very environmental interests that Plaintiffs assert. *See* IIRIRA § 102(c)(1), *see also* Pub. L. No. 104-208, div. C, tit. I, § 102(c) (waiving the Endangered Species Act and the National Environmental Policy Act).

Even so, Plaintiffs' harms are minimal compared to the government's. Plaintiffs claim loss of residential use, ability to deploy equipment, access to the Rio Grande River, and boat launch use; permanent alterations to the terrain and character of the Parks; harm to the long-nosed bat and Big Bend gambusia; and loss of archaeological sites, historic structures, and sacred sites. Mot. at 25-28. Plaintiffs' allegations are either mistaken or speculative at best. *See* Enriquez Decl. ¶¶ 37-45.

Plaintiffs will not suffer any loss to the use of their property or the parks. For any barriers on personal property, "CBP has a long history of incorporating gates into barrier system to

facilitate access for various activities." *Id.* ¶ 38. That includes river access. *Id.* at ¶¶ 38, 42. Regarding the Parks, CBP is not building any barriers in the Big Bend Ranch State Park, and only "plan[s] to construct a very limited amount of non-contiguous vehicle barrier" in Big Bend National Park. *Id.* at ¶ 39. There is also "no evidence that CBP's proposed construction activities will result in the closure of hiking trails or roads within the parks," *id.* at ¶ 41, and "access to the river [in the Parks] will not be impacted by barrier." *Id.* at ¶ 42. As any barriers and roads in the parks will be limited in nature, "there should be little to no impact on Plaintiffs' . . . ability to access areas within the parks." *Id.* at ¶ 41.

Plaintiffs are also wrong that construction will harm the biology or cultural resources of the Parks. CBP always conducts a biological and cultural survey prior to every barrier construction project, which allows them to minimize or avoid impacts where possible. *Id.* at ¶ 43. CBP also has environmental monitors on hand to observe construction activities, and they follow an extensive list of best Management Practices. *See id.* at 45.

Finally, CBP has been aware of the public's sentiment regarding construction in the Parks and has engaged with stakeholders and the public accordingly. *See id.* at ¶¶ 20-28. CBP has considered that feedback in good faith and is actively considering adjustments to the Big Bend 4 project, which they intend to make public shortly. *Id.* at ¶ 35.

**CONCLUSION**

For the reasons explained above, Plaintiffs' motion for a preliminary injunction should be denied.

Dated: September 30, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ANDREW I. WARDEN
Assistant Branch Director

*/s/ Alexander J. Yun*
ALEXANDER J. YUN
(D.C. Bar No. 90028923)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
202-674-0255
Alex.Yun@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2026, the foregoing pleading was filed electronically through the CM/ECF system, which causes all parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

*/s/ Alexander J. Yun*
ALEXANDER J. YUN
Trial Attorney
United States Department of Justice