# EXHIBIT A

**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **CHARLES ANGELL and ANGELL EXPEDITIONS, LLC** | § | |
| ***Plaintiffs*,** | § | |
| **v.** | § | **CIVIL ACTION NO. 5:26-cv-05580-KC-RBF** |
| **MARKWAYNE MULLIN, The Secretary of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; RODNEY S. SCOTT, Commissioner of U.S. Customs and Border Protection; U.S. CUSTOMS AND BORDER PROTECTION; JOSH B. BARRETT, Acting Chief Patrol Agent of the United States Border Patrol's Big Bend Sector; LIEUTENANT GENERAL WILLIAM H. GRAHAM, Chief of Engineers and Commanding General of the U.S. Army Corps of Engineers; and UNITED STATES ARMY CORPS OF ENGINEERS** | § | |
| ***Defendants*.** | § | |

**UNSWORN DECLARATION OF CHARLES ANGELL IN SUPPORT OF PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT**

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF PRESIDIO | § |

Know all men by these presents, that before me, the undersigned authority, on this day personally appeared CHARLES ANGELL, who upon his oath did depose and state:

1. My name is Charles Angell. I am over the age of twenty-one (21) years old. I reside at, and Angell Expeditions, LLC ("Expeditions") is located at, 302 El Polvo Road, P.O. Box 165, Presidio County, Texas, Redford, Texas 79846. I have never been convicted of a crime involving moral turpitude. I have personal knowledge of the facts set forth herein. I am of sound mind and

based upon my personal knowledge am otherwise competent to make this Declaration in support of Plaintiffs' Reply in Support of their Motion for Preliminary Injunction and Memorandum in Support (referred to herein as "Declaration"). This Declaration incorporates and does not replace the affidavit and declaration I previously made in support of Plaintiffs' Application for Temporary Restraining Order and Motion for Preliminary Injunction and Memorandum in Support but includes additional facts as presented below.

2. I am the sole managing member of Angell Expeditions, LLC ("Expeditions"), a Texas limited liability company. I live and conduct my business from Presidio County, Texas and in the Big Bend National Park and Big Bend Ranch State Park vicinity, which includes use of the Rio Grande River and Rio Grande Wild and Scenic River and other areas of special interst, recreation, and enjoyment. I personally, and through Expeditions, utilize hiking, biking, and other trails located throughout the Big Bend Sector 2, Big Bend Sector 4, Big Bend Sector 5, the Big Bend National Park, Big Bend Ranch State Park, the Rio Grande River, and Rio Grande Wild & Scenic River, and surrounding areas.

## I. A Border Wall(s) Adversely Impacts My Livelihood

3. As set forth more fully in this Declaration, I have concrete, personal, and business interests in the waters, lands, and natural resources on which I base my livelihood that will be adversely impacted by the project to build any portion of the Border Wall[1] through the Big Bend project area 2, which encompasses my property, and the Big Bend 4 region as well as throughout the Big Bend region. These interests, as well as my interests in my home and business, include my longstanding recreational use and aesthetic enjoyment of Big Bend National Park, Big Bend Ranch

[1] The term Border Wall means any vertical structure meant to provide border security, including but not limited to thirty (30) foot high pedestrian barriers, vehicle barriers, with their associated infrastructure, including roads and electrical and utility corridors.

State Park, the Rio Grande River, Rio Grande Wild Scenic River, and the surrounding areas as well as my business use of the land I own located in Big Bend project area 2, Big Bend National Park, Big Bend Ranch State Park, the Rio Grande River, the Rio Grande Wild Scenic River, and the surrounding areas. These interests are threatened with harm and will be harmed by the construction of border wall barriers throughout these areas and the failure of the Defendants to comply with constitutional law. Not only will the construction process be harmful and elements of it permanent, more significant than the construction, will be the presence of the Border Wall throughout the Parks. Their presence, regardless of exact location, will ruin the view from every angle. Their presence and visibility will destroy the very free, natural, undisturbed environment people come to the Big Bend region to enjoy. Some measurable number of people will choose to go elsewhere because the Big Bend will no longer represent a place they want to visit. This inevitable result will also affect my business and livelihood.

4. I conduct river trips within the Big Bend region, and Expeditions regularly rafts or boats the Rio Grande River. I conduct river trips through numerous areas of the Rio Grande River for my own recreation as well as for Expeditions' guide business. Expeditions regularly launches, runs, and takes out river trips at each of the following locations within the Big Bend 5 project area and in the immediate surrounding areas which covers approximately GPS point 29.728522, -102.683945 east to approximately GPS point 29.449892, -101.058017: (1) Heath Canyon Ranch/La Linda River Access; (2) four Rio Grande River access points in Black Gap Wildlife Management Area; (3) the 83-mile Lower Canyons segment designated as "Wild and Scenic" in 1978 by Congress; (4) Dryden Crossing/Harrison Rock Ranch; (5) the 54-mile Dryden Crossing-to-Langtry segment; (6) Foster's Ranch River Access; (7) the Langtry River access road; (8) the 15-mile Langtry-to-Pecos confluence segment; (9) Pecos River boat launch/access; (10) multiple

Lake Amistad boat-launch/access sites from Highway 90; and (11) Rough Canyon Marina, where the Devils River meets the Rio Grande/Lake Amistad. A true and correct copy of a map depicting these river access points and areas where Expeditions regularly launches, runs, and takes out river trips within Big Bend 5 project are and in the immediate surrounding areas is attached hereto as Exhibit A-1. It is my understanding each site listed above lies within the boundaries of Homeland Security's July 27 Determination relating to barrier, road, staging, excavation, and fill activities.

5. I personally and through Expeditions use the Rio Grande River and the Rio Grande Wild and Scenic River, including the areas listed above for my personal livelihood and the livelihood of my business. I, as well as Expeditions, are threatened by, and will suffer concrete and particularized injuries within the areas covered by the Secretary's July 27 Determination. The Border Wall will impact my livelihood and the livelihood of my business by affecting the numbers of tourists that come to visit Big Bend National Park, Big Bend Ranch State Park, and surrounding areas and book tours with Expeditions to see the surrounding undisturbed nature, wildlife, and landscape. With barrier walls in place, the number of tourists that will visit the parks annually and book my guided river tours will be severely diminished.

6. My access to and use of the Rio Grande River and Rio Grande Wild and Scenic River will be severely restricted and limited if the Border Wall is constructed along the United States/Mexico border as well as any actual waterborne barriers within the Rio Grande River and Rio Grande Wild and Scenic River. Not only will the Border Wall impact my ability to operate Expeditions and take tour groups out onto the Rio Grande River and/or Rio Grande Wild and Scenic River, but barriers, including vehicle barriers, will also severely affect the response times of me, my guides, and other emergency personnel to any emergencies that may arise on any given guided river tour including the ability of emergency personnel to respond to any emergency in the

River and get to the nearest highway. It is certain, and I have no information from CBP on how construction of the Border Wall will affect flooding and emergency scenarios.

7. Further, border barriers along my property and/or in the Rio Grande River and Rio Grande Wild and Scenic River would increase the likelihood of flooding on my back patio and into the structures on my property, including my home.

**II. Condemnation Effects**

8. My business will be adversely affected should the government condemn my land to construct a border wall.

9. The first time I received notice regarding a taking of my property was on February 20, 2026, when I received the "Notice of Interest" from U.S. Customs and Border Control ("CBP") attached hereto as Exhibit A-2 identifying portions of my property as the subject of condemnation in connection with the construction of the Border Wall. This Notice of Interest was the first notice I received of a potential acquisition of a portion of my property, potential access needed across or adjacent to my property, and any real estate of boundary considerations that may arise as project design for the Border Wall construction across the United States/Mexico border.

10. In this Notice of Interest, I did not receive an appraisal of my property, or any offer of just compensation for the taking or condemnation of my property. As of the date of this Declaration, I have not received any appraisal or any offer of just compensation for the taking or condemnation for any portion of my property.

11. I did not and have not received any notice regarding the July 27, 2026 Determination from any governmental agency.

**III. Polvo Site**

12. There are burials on my property located at the Polvo site (41PS21), Presidio County, Texas (the "Site"). The Site is approximately a rough trapezoidal shape 4.6 acres in area. A true and correct copy of a map depicting the Site is attached hereto Exhibit A-3 with notes from Mr. Angell. It is estimated the Site has dozens of burials within it with most estimates ranging at over one hundred or more burials. The Site contains both prehistoric and historic cultural materials. It was listed on the National Register of Historic Places (NRHP) on March 25, 1976 and was accepted as a State Archeological Landmark (SAL) on November 7, 1983.

13. In 1948-1949, field work conducted by Charles Kelley revealed the Site contained architectural and archeological remains of a large prehistoric village of the La Junta phase (Patarabueye Indians) from 1200-1450 A.D. as well as subsequent prehistoric occupations during the Concepcion phase and extensive village remains dating to Spanish (Conchos phase) and Mexican (Alamito phase) periods. Evidence strongly suggests the Site was also the location of an early Spanish mission (San Antonio de los Puliques) established for the "Pescado" Indians. Archeological testing and aerial mapping of the Site were performed by the Office of the State Archeologist (OSA), Texas Historical Commission (THC), from January 4 through 22, 1994. The testing consisted of hand-excavated test units, shovel test pits, cutbank profiles, surface collections, and informal oral history interviews. As a result of the testing, five cultural features were identified: two probable house structures, a separate post mold; and two pits. All diagnostic materials (lithic, ceramic, metal, and glass artifacts) recovered appear to date to the different phases defined for the Late Prehistoric and Historic time periods in this area of West Texas and northeastern Chihuahua. This investigation was able to define the horizontal and vertical extents of the Site and allowed for data recovery from the various areas of the Site.

14. An Antiquities Permit Application has recently been issued to review and investigate the Site for the additional burial sites.

15. According to maps and depictions received from CBP and attached as Exhibit A-8 to the Motion for Preliminary Injunction, the proposed Border Wall barriers will run through and disrupt the Site and disturb an area protected by under federal and state law.

16. As a managing member of Expeditions and in my personal capacity, I am authorized to state my interests and injuries as well as those of Expeditions as described in this Declaration.

My name is Charles Angell, my date of birth is August 18, 1966, my work address is 302 El Polvo Road, P.O. Box 165, Presidio County, Texas, Redford, Texas 79846. I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on October 5, 2026.

CHARLES ANGELL

# EXHIBIT A-1

# DHS Waiver (91 FR 46939, July 27, 2026) project area and Rio Grande river access sites

Project area per Section 2 of the waiver: from approx. 29.728522, −102.683945 extending east to approx. 29.449892, −101.058017 (Brewster, Terrell and Val Verde Counties, Texas). Sites numbered here are listed with coordinates and sources on page 2.




- Waiver project area (border between the two waiver GPS points)
- Waiver start / end GPS points
- Lower Canyons Wild & Scenic River (Heath Canyon to Dryden, ~83 mi)
- Rio Grande, Dryden Crossing to Langtry (~54 mi)
- Rio Grande, Langtry to Pecos River confluence (~15 mi)
- Access site between the waiver points
- Access site outside the span between the points (see table)
- Black Gap WMA access (approx., from annotated map)
- Highways (US 90, US 277/377, US 385 ...)

Detail A — Heath Canyon, Maravillas Creek and Black Gap WMA




Detail B — Lake Amistad (US 90 ramps, Rough Canyon)




Base data: Natural Earth 1:10m (generalized river/border, lakes, roads). Site coordinates from the sources listed on page 2.
Shaded band width is for visibility only; the waiver defines the project area by its two GPS points along the border. Prepared October 2026.

# Access sites and their position relative to the waiver GPS points

"River distance from start" is measured along the generalized international boundary from the waiver start point (negative = upstream/west of it).
Waiver span is about 218 km (135 mi) on this generalized line; actual river miles are longer because of meanders.

| # | Site | Lat, Lon | Coordinate source | To border | River dist. from start | Position |
|---|---|---|---|---|---|---|
| 1 | Heath Canyon Ranch / La Linda access | 29.45082, -102.82199 | American Whitewater | 1.6 km | -35 km / -22 mi | **Upstream (west) of start** |
| 2 | Maravillas Creek access | 29.56140, -102.77810 | howsyourriver.com | 0.4 km | -23 km / -14 mi | **Upstream (west) of start** |
| BG1 | Black Gap WMA access 1 (approx.) | 29.50947, -102.79677 | Annotated map (approx.) | 1.3 km | -28 km / -18 mi | **Upstream (west) of start** |
| BG2 | Black Gap WMA access 2 (approx.) | 29.59616, -102.75235 | Annotated map (approx.) | 1.2 km | -16 km / -10 mi | **Upstream (west) of start** |
| BG3 | Black Gap WMA access 3 (approx.) | 29.61836, -102.72207 | Annotated map (approx.) | 2.8 km | -12 km / -8 mi | **Upstream (west) of start** |
| BG4 | Black Gap WMA access 4 (approx.) | 29.64480, -102.72812 | Annotated map (approx.) | 0.7 km | -10 km / -6 mi | **Upstream (west) of start** |
| BG5 | Black Gap WMA access 5 (approx.) | 29.66338, -102.71339 | Annotated map (approx.) | 1.2 km | -8 km / -5 mi | **Upstream (west) of start** |
| 3 | Dryden Crossing / Harrison Rock Ranch | 29.80901, -102.14815 | southwestpaddler.com | 0.8 km | 69 km / 43 mi | **Between the waiver points** |
| 4 | Foster's Ranch access | 29.78080, -101.75600 | NOAA gauge LNYT2 | 1.1 km | 110 km / 68 mi | **Between the waiver points** |
| 5 | Below Foster's Ranch access | 29.77610, -101.72080 | NOAA gauge LNYT2 | 1.2 km | 113 km / 71 mi | **Between the waiver points** |
| 6 | Langtry river access road (at USGS gauge) | 29.80578, -101.55108 | USGS site 294821101330400 | 0.1 km | 131 km / 82 mi | **Between the waiver points** |
| 7 | Pecos River boat launch | 29.70242, -101.36494 | Mountain Project / Google Maps | 1.1 km | 165 km / 102 mi | **Between the waiver points** |
| 8 | Box Canyon ramp (US 90) | 29.52460, -101.17390 | howsyourriver.com | 0.8 km | 204 km / 127 mi | **Between the waiver points** |
| 9 | Spur 406 ramp (off US 90) | 29.55100, -101.02040 | howsyourriver.com | 10.1 km | 219 km / 136 mi | **Reservoir, past end point*** |
| 10 | Diablo East ramp (US 90) | 29.47790, -101.01680 | howsyourriver.com | 2.8 km | 220 km / 136 mi | **Reservoir, past end point*** |
| 11 | Black Brush Point ramp (US 90) | 29.47430, -100.98620 | howsyourriver.com | 5.3 km | 221 km / 137 mi | **Reservoir, past end point*** |
| 12 | San Pedro / Spur 454 area (off US 90) | 29.47152, -100.95480 | outdoorithm.com | 7.9 km | 222 km / 138 mi | **Reservoir, past end point*** |
| 13 | Rough Canyon Marina (Devils River arm) | 29.57290, -100.97690 | howsyourriver.com | 13.8 km | 220 km / 136 mi | **Reservoir, past end point*** |

* The waiver end point is at Amistad Dam. Lake Amistad lies upstream of the dam but its arms extend north-east of it, so ramps on the reservoir near Del Rio project onto the border just past the end point (Diablo East is ~5 km from it; Rough Canyon ~16 km, on the Devils River arm).

Black Gap WMA sites BG1–BG5 are the five marks on the client's annotated Lower Canyons map, georeferenced to Heath Canyon, Maravillas Creek and Dryden Crossing; positions are approximate (likely within ~1 km).

Segments: Wild & Scenic (Heath Canyon Ranch access to Dryden), Dryden Crossing to Langtry (USGS sites 294833102085400 / 294821101330400), Langtry to Pecos River confluence.
Langtry access road is plotted at the Langtry USGS gauge location.

# EXHIBIT A-2

U.S. Customs and Border Protection

1300 Pennsylvania Avenue NW
Washington, DC 20229

February 20, 2026

**Mr. Charles Angell**
Post Office Box 136
Redford, Texas 79846

**Subject: Notice of Interest – Property Located Near Planned Border Barrier System Construction Projects**

Dear Mr. Angell,

U.S. Customs and Border Protection (CBP) and U.S. Border Patrol (USBP) are currently planning border barrier system construction along the southwest border, including in Presidio County, Texas. We have tentatively identified that we may need to enter the following property for either construction or access purposes BBT-PRS-2055 and BBT-PRS-2055-1. County records indicate that you may be that property's owner. If you are not the property owner, please disregard this letter and let us know immediately.

We write to you to formally notify you of CBP's interest in discussing the following:

- Potential acquisition of portions of your property related to project construction or maintenance;
- Potential access needs across or adjacent to your property; and/or
- Any real estate or boundary considerations that may arise as project design advances.

This letter is **not a purchase, lease, or easement offer or agreement,** and it does not oblige you in any way to provide access to or acquisition of your property. This letter is intended solely as an initial notification of interest and to open communication with you as the potential property owner.

When CBP determines that it needs access to property, either temporary or permanent, it has three options:

> **Option A**: Enter into a Right of Entry for Construction (ROE-C) agreement with the owner wherein CBP can access the property, complete surveys, appraise the property, and then complete construction. CBP would then separately negotiate a purchase or easement from the owner of any real property interests that it continues to need once construction is completed (including the land underneath whatever was constructed);

**Option** B: Not enter into an ROE-C, but negotiate a purchase or easement agreement with the landowner quickly enough that CBP's construction timelines are not impacted; or

**Option C**: If the landowner and CBP are unable to reach a negotiated purchase or easement agreement, referral to the U.S. Department of Justice to initiate the eminent domain/condemnation process.

Of these options, our preferred and ideal route is Option A, as it allows us to work collaboratively with you, complete construction as quickly as possible, and then pay you the fair market value of any property rights CBP determines it needs going forward. Enclosed is the ROE-C for your review and hopeful approval. If you agree, the ROE-C will allow CBP immediate access to the property so that we can complete necessary border barrier work. Once CBP has completed its surveys and determined what permanent or temporary property rights, if any, that it needs, we can then negotiate the purchase of those rights from you in accordance with The Uniform Relocation Assistance and Real Property Acquisition Policies Act, 42 U.S.C. Ch. 61 and 49 C.F.R. Part 24, ("The Uniform Relocation Act") which sets the rules for real estate acquisitions by the Federal Government.

Should you agree to the ROE-C, CBP will pay you a one-time amount of $2,500.00 so that it may immediately access your property and begin activities related to the border barrier project. **This amount is in addition to the fair market value of any real property rights CBP later determines that it needs to acquire from you** and is yours to keep even if CBP determines that it does not need your property for the border barrier project. The ROE-C does not grant CBP permanent access to your property, nor does it include the permanent transfer of any real property interests to CBP; it is just an agreement to provide CBP temporary access to the property so that it may conduct activities related to border barrier construction. Put differently, your land is still your land, you would just be giving CBP permission to enter onto your land and begin construction on border barrier infrastructure if necessary. Should CBP determine that it has a permanent need for any portion of your property, CBP will then need to separately acquire those property rights from you as required by The Uniform Relocation Act. **The ROE-C does not in any way waive your right to seek the fair market value of any permanent property interests CBP may need to acquire from you.**

It is always CBP's preference to obtain the necessary real estate for border barrier projects through voluntary agreements. However, please be advised that if we are unable to reach a voluntary agreement through negotiation within a reasonable time, CBP and/or its executing agency may proceed to refer the matter to DOJ to acquire any necessary property interest(s) through the exercise of eminent domain, in accordance with the Declaration of Taking Act (40 U.S.C. §§ 3113 and 3114).

For further information regarding the project, please refer to the following web address: Smart Wall Map | U.S. Customs and Border Protection (https://www.cbp.gov/border-security/along-us-borders/smart-wall-map). Please review the ROE-C and associated information, and, if acceptable, sign and return it within five (5) business days. Alternatively, we can provide a digital copy via email for electronic signature.

CBP has collaborated with the U.S. Army Corps of Engineers (USACE) on real estate efforts to support the work effort described above. If you have any questions or would like to discuss the information provided in this letter, we are available to schedule a meeting to provide additional details, address your concerns, and explore next steps. Should you have any questions please contact Robert Davalos, USACE Realty Specialist, (817) 886-1218 or e-mail robert.davalos@usace.army.mil.

We appreciate your time and consideration as CBP works to execute border barrier system construction projects to secure our nation's borders.

Sincerely,

Paul Enriquez
Director – Infrastructure Portfolio
Program Management Office Directorate
U.S. Border Patrol
U.S. Customs and Border Protection

Enclosure

CM: 9589 0710 5270 2540 5946 71
RM

# EXHIBIT A-3


This from 1994,
I built my structures & house from
2016- to present
Figure 5
Polvo Site (41PS21)
Contour Map and Excavation Plan
KEY
Exisiting structure
Road or trail
Fenceline
Trees and brush
Archeological excavations
Cutbank profiles
Mapping by McAlister Aerial Surveys
Scale
1" = 82 m
Contour Interval = 50 cm
my 2 story house, added for perspective
Highlighted area is the State Archeological Landmark & National Register of Historic Places
Artificial Levee
Area F
TU-6
DIRT PILE
GRAVEL PIT
DENSE TREES
Area A
Area B
Area C
Area D
Area E
TU-1
TU-2
TU-3
TU-4
TU-5