# EXHIBIT B

**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **CHARLES ANGELL and ANGELL EXPEDITIONS, LLC,** | § | |
| ***Plaintiffs*,** | § | |
| **v.** | § | **Case No. 5:26-cv-05580-KC** |
| **MARKWAYNE MULLIN, The Secretary of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; RODNEY S. SCOTT, Commissioner of U.S. Customs and Border Protection; U.S. CUSTOMS AND BORDER PROTECTION; JOSH B. BARRETT, Acting Chief Patrol Agent of the United States Border Patrol's Big Bend Sector; LIEUTENANT GENERAL WILLIAM H. GRAHAM, Chief of Engineers and Commanding General of the U.S. Army Corps of Engineers; and UNITED STATES ARMY CORPS OF ENGINEERS** | § | |
| ***Defendants*.** | § | |

**UNSWORN DECLARATION OF THADDEUS C. CLEVELAND IN SUPPORT OF PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT**

STATE OF TEXAS §
§
COUNTY OF TERRELL §

Know all men by these presents, that before me, the undersigned authority, on this day personally appeared THADDEUS C. CLEVELAND, who upon his oath did depose and state:

1. My name is Thaddeus C. Cleveland. I am over the age of twenty-one (21) years old. I have never been convicted of a crime involving moral turpitude. I have personal knowledge of the facts set forth herein. I am of sound mind and based upon my personal knowledge am

otherwise competent to make this Declaration in support of Plaintiffs' Reply in Support of their Motion for Preliminary Injunction and Memorandum in Support (referred to herein as "Declaration").

## I. Introduction and Background

2. I currently serve as Sheriff of Terrell County, Texas. I was appointed to the position on May 17, 2022, and was subsequently elected in November 2022 to continue my service as Sheriff. I have more than 26 years of experience with the United States Border Patrol (sometimes referred to herein as "CBP"), including approximately 11 years serving as the Patrol Agent in Charge of the Sanderson Border Patrol Station, in Sanderson, Texas. Prior to beginning my Border Patrol career, I served in the United States Air Force. This Declaration addresses in principal part my opinions concerning border security, alternatives to a 30-foot pedestrian barrier and other barriers, and the use of 21st century technology to assure operational control of the Southern Border. My examples in this Declaration focus on the Big Bend Project 2 area because that is where the construction after the "pause" is scheduled to take place. My suggestions and solutions can also be applied to other areas in the vicinity of high illegal entry.

3. My experience as Patrol Agent in Charge is particularly relevant to border security and public safety in the Big Bend region. As the senior official responsible for a Border Patrol station, a Patrol Agent in Charge provides leadership and oversight of station personnel, resources, and law-enforcement operations within the station's domain and area of responsibility. Station operations can include border patrol and line-watch activities, responding to electronic sensor detections, tracking activity through remote terrain, transportation and traffic operations, anti-smuggling activities, and the use of surveillance and other border-security methods and methods and technologies. The position also requires the coordination of personnel and operational

resources while maintaining working relationships with other federal, state, and local law-enforcement agencies.

4. Serving for approximately 11 years as Patrol Agent in Charge at Sanderson gave me extensive experience managing border-security operations in the remote and rugged environment of West Texas. The Sanderson Station falls within the U.S. Border Patrol's Big Bend Sector, which encompasses one of the largest and most geographically challenging areas of responsibility along the Southwest border. My tenure provided me with direct experience on many of the issues that continue to affect border operations in the region, including large geographic distances, limited infrastructure, difficult terrain, ranch and private-property access, technology and surveillance requirements, emergency response, and coordination among multiple law-enforcement agencies.

5. During my Border Patrol career, I also served on several assignments that expanded my experience beyond station-level operations. I served as an advisor on Border Patrol operations with the Texas Department of Public Safety in Austin and with U.S. Army North at Fort Sam Houston. I also served in Washington, D.C., within the CBP Commissioner's Office of Anti-Terrorism and the Office of State, Local, and Tribal Liaison. These assignments provided experience working across federal, state, local, and military organizations and further developed my understanding of interagency coordination and border-security operations.

6. Since becoming Sheriff, I have continued to work across jurisdictional boundaries in coordinating public-safety and border-security activities in Terrell County. My office has worked with organizations including the Texas Department of Public Safety, Texas Parks and Wildlife Department, Texas Military Department, and U.S. Border Patrol. This combination of federal Border Patrol leadership and local elected service provides me with experience addressing

border-security issues from both the federal operational perspective and the perspective of a rural border community directly affected by border-security policies and infrastructure.

7. My work as Sheriff has led me to design and implement a 21st century, technology-based Border Security System, without barriers of any kind, for Terrell County that was constructed several years ago, and has been operating effectively since that time.

## II. CBP Current Plans for Big Bend Project 2

8. Big Bend Project 2 is located in Presidio County, Texas, and encompasses approximately 68.2 miles of the U.S.–Mexico border. Based on current CBP Smart Wall[1] project data, approximately 62.2 miles of the project area are identified for primary border wall infrastructure. The project begins near Ruidosa, Texas, at its westernmost boundary and generally follows the Rio Grande southeast through the Presidio area toward Madera Canyon Campground in Big Bend Ranch State Park.

9. The full project limits, however, should be distinguished from the extent of bollard fencing currently depicted on CBP's Border Wall Map.[2] The current map appears to show the proposed bollard-style 30-feet high pedestrian barrier extending through the Presidio area and continuing downriver only slightly beyond Alamitos Creek, approximately eight miles southeast of Presidio. Based on the currently available mapping, it is therefore unclear whether bollard fencing is ultimately intended to extend throughout the full Big Bend Project 2 corridor toward Madera Canyon or whether portions of the remaining project area would rely on other forms of border infrastructure, surveillance technology, access improvements, or future construction

[1] CBP periodically publishes information on the "Smart Wall" to be used in connection with attaining operational control over the Southern Border. A true and correct copy of the current (October 7, 2026) edition is attached hereto as Exhibit B-1.

[2] A true and correct copy of the current Border Wall Map is attached hereto as Exhibit B-2.

phases. It is my opinion barriers in these areas are unnecessary and unhelpful when compared with other Border Security methods. Nevertheless, the current Smart Map shows 62.2 miles of primary wall are to be built in Big Bend 2. In Mr. Enriquez's Declaration at paragraphs 29 and 30, he states the Big Bend 2 plan is "substantially similar to what was originally planned" (¶ 29) and will consist of 61 miles of barrier system, some of which will be "30-foot bollard-style pedestrian barrier, a road, and barrier system attributes." (¶ 30).

10. For purposes of this analysis, Big Bend Project 2 is considered as the approximately 68.2-mile project corridor beginning near Ruidosa and extending southeast toward Madera Canyon, while recognizing that the currently depicted extent and final configuration of any proposed primary bollard fencing may differ from the overall project boundaries.

**III. Big Bend Operational Environment**

11. An important consideration in evaluating border infrastructure within the Big Bend region is the significant difference between the developed environment surrounding Presidio and the remote terrain that characterizes much of the remainder of the project area. For purposes of this analysis, Presidio and its immediate surroundings can be considered the primary developed or urbanized portion of the corridor, while the areas extending upriver and downriver are predominantly rural and remote. These differences directly affect how border-security infrastructure and technology can be employed.

12. In a developed border environment such as Presidio, the distance between the international boundary, established roadways, residential areas, and other infrastructure can reduce the amount of time available for Border Patrol agents to detect, identify, and respond to illegal cross-border activity. Once an individual reaches established transportation routes or developed areas, detection and interdiction can become more difficult. Physical barriers in these locations can in some instances therefore serve an important operational purpose by delaying and channeling

movement, providing agents additional time to detect activity and respond. In many ways bollard style pedestrian barriers are less incompatible with urban and individual settings than with special wilderness areas.

13. The operational environment changes considerably outside the Presidio area. Much of the Big Bend border is characterized by remote terrain, limited road networks, low population density, substantial distances between communities, and difficult natural terrain. In these areas, time and distance can provide Border Patrol with an operational advantage. Individuals crossing the border may still have significant distances to travel before reaching population centers, major transportation corridors, or other locations that could facilitate movement away from the immediate border area. When effective detection and surveillance capabilities are present, this additional distance can increase the time available for agents to identify, track, and intercept illegal cross-border activity.

14. This distinction is important when considering whether the same type of physical infrastructure is necessary throughout the entire Big Bend Project 2 corridor. A developed environment with a short detection-and-response window may justify a different combination of infrastructure than a remote environment where surveillance systems can provide early detection and agents have additional time and distance in which to respond. In remote portions of the Big Bend region, technologies such as linear ground detection, autonomous surveillance towers, mobile surveillance systems, and available aerial surveillance can potentially provide early warning and persistent situational awareness while improved access routes support the ability of agents to respond.

15. Accordingly, the alternative presented in this analysis is based on matching 21st century border-security capabilities to the operational environment, rather than applying an

intrusive, cumbersome solution across the entire project area. Targeted bollard fencing would be considered in and around the developed Presidio area, where controlling and channeling movement can increase the time available for interdiction and barriers are not in sharp contrast to the surrounding environment. In the more remote portions of the corridor, the alternative would utilize early detection, persistent surveillance, improved access, mobility, and response. This approach recognizes that the operational challenges of the Presidio area are fundamentally different from those encountered across the remote portions of the Big Bend border.

## IV. Technical Alternative – Big Bend Project 2

### A. Alternative Technical Approach

16. As an alternative to CBP's currently proposed border-infrastructure concept in the Big Bend and Presidio area, this alternative would employ a layered combination of targeted physical barriers under effective and least intrusive, improved patrol access, subsurface ground-detection technology, fixed and relocatable surveillance systems, mobile surveillance platforms, and aerial surveillance. The objective would be to maintain border-security and situational domain-awareness capabilities while reducing the deployment of continuous bollard fencing through remote, environmentally sensitive, scenic, agricultural, and privately owned portions of the project area.

17. The concept would begin in the vicinity of Ruidosa, Texas, and extend generally southeast along the Rio Grande through the Presidio area, potentially continuing toward Alamitos Creek or farther downriver toward the Madera Canyon area where operational requirements warrant. Rather than applying a uniform infrastructure solution throughout the entire corridor, the alternative would match individual security technologies to terrain, development patterns, existing transportation corridors, land ownership, environmental constraints, and identified surveillance requirements.

**B. Border Access and Linear Ground Detection**

18. A principal component of the alternative would be the improvement of the border access roadway generally paralleling the Rio Grande or establishing a new road in the same general location. Where feasible, a CBP linear ground detection system could be installed beneath or immediately adjacent to the roadway. The detection system would provide an additional means of identifying movement across selected portions of the border corridor while allowing agents to respond using an improved transportation route.

19. Additional access could also provide secondary benefits where landowner agreements and property conditions permit, including improved access to remote portions of participating properties. Such an alternative configuration could use portions of the existing FM 170 utility corridor without disturbing undeveloped lands. Where engineering, right-of-way, drainage, safety, and environmental conditions allow, portions of the roadway corridor could be widened or otherwise modified to accommodate detection technology and supporting infrastructure.

20. The roadway and linear detection system would not necessarily need to extend continuously throughout the entire project area. Deployment could instead be prioritized in locations where CBP determines terrain, access limitations, surveillance gaps, or response requirements justify the infrastructure. This approach would allow the project footprint to be adjusted to site-specific operational requirements rather than applying the same construction standard across the entire more than sixty-mile border corridor.

**C. Targeted Bollard-Style Fencing**

21. Under this alternative, bollard fencing, if any, would be considered for areas concentrated primarily around the more developed Presidio area rather than extending continuously through long stretches of remote borderland.

22. The purpose of any targeted fencing would be to control and channel movement in areas where roads, residences, utilities, agricultural activity, commercial activity, and other development create a more complex operating environment for apprehending illegal entrants. In these locations, physical barriers could be integrated with existing transportation infrastructure, designated crossings, patrol routes, surveillance systems, and response operations in an effective way without sacrificing park land environments or natural aesthetics.

23. The construction and use of bollard-style barriers up to 30 feet high is well recognized as being polarizing and generally opposed by members of the community. Prior to construction of any bollard-style barriers, even in appropriate areas, a study demonstrating the use of bollard-style barriers will be appropriate, feasible, and effective in the specific way the barriers are to be used should be performed.

24. Outside those developed areas, the alternative would place reliance on detection, surveillance, access, and response capabilities rather than continuous bollard wall construction. This would reduce the extent of permanent physical infrastructure across remote areas where rugged terrain, floodplains, private property, scenic resources, wildlife movement, drainage patterns, and limited road access may present additional construction and maintenance considerations.

**D. Relocatable Autonomous Surveillance Towers**

25. Fixed and relocatable surveillance systems would provide the primary elevated surveillance component of the alternative. General Dynamics Information Technology Relocatable Autonomous Surveillance Towers RAST), or comparable CBP surveillance systems, could be positioned at locations selected through terrain and line-of-sight analysis.

26. RAST systems are designed to provide persistent detection, classification, and tracking across extended areas using radar, electro-optical sensors, automated analytics, and

sensor-fusion capabilities. Publicly reported configurations include approximately 80-foot and 120-foot towers, with GDIT reporting detection capability at distances of up to approximately 10 miles under suitable terrain and environmental conditions.

27. The relocatable nature of the towers would cause for less adverse impacts than a wall and would provide flexibility that permanent infrastructure does not. Towers could be positioned to address specific surveillance gaps, repositioned as operating requirements change, or placed to take advantage of elevated terrain and existing access. Solar power, battery storage, and remote communications further allow deployment in areas where conventional utility infrastructure is limited. Installation or movement would be by helicopters in difficult to remote areas without existing roads.

**E. Mobile Surveillance Capability**

28. Mobile Video Surveillance Systems would provide a second layer of ground-based surveillance. MVSS units use vehicle-mounted extendable masts equipped with electro-optical and infrared imaging systems and associated other electronic operations equipment. Their mobility would allow Border Patrol agents to temporarily establish observation points in areas where permanent infrastructure is unavailable, where terrain limits fixed-sensor coverage, or where activity patterns or extraordinary conditions require temporary surveillance.

29. The mobile capability would also allow CBP to adjust surveillance coverage without requiring additional permanent construction. As operational conditions change, systems could be moved between locations to supplement tower coverage, monitor access corridors, or provide additional observation in areas experiencing temporary increases in activity. This operational flexibility provides much more security capabilities than construction of rigid, permanent barriers.

### F. Aerial Surveillance

30. CBP Air and Marine Operations aircraft, including MQ-9[3] unmanned aircraft (large drone) provides an additional wide-area surveillance layer. The MQ-9's long endurance and electro-optical, infrared, and radar surveillance capabilities allow it to observe considerably larger geographic areas than individual ground systems and are obviously more capable of detection and capturing illegal immigrants than a wall.

31. Aerial surveillance would not replace ground infrastructure or personnel. Rather, it could supplement ground-detection systems, surveillance towers, mobile surveillance platforms, and field agents by providing broader situational and domain awareness when mission requirements and aircraft availability permit.

### G. Integrated Detection and Response Architecture

32. The principal technical feature of this alternative is the integration of multiple complementary systems rather than primary reliance on a continuous, rigid, immobile physical barrier. Linear ground detection would provide profiles of movement; surveillance towers could assist in detection, classification, verification, and tracking; mobile surveillance systems could address temporary or terrain-driven coverage gaps; improved access roads could support response and maintenance; limited targeted fencing could channel movement in developed areas; and aerial systems could provide broader-area observation.

33. Information from these systems could be integrated into CBP command-and-control operations to improve situational awareness and allow personnel to determine the appropriate, measured, and proportionate response to detected activities. The resulting architecture

[3] A true and correct copy of CBP's brochure on the MQ-9 is attached hereto as Exhibit B-3.

would provide multiple detection and observation layers while tailoring border security methods with the least adverse impacts to locations where they provide the greatest operational value.

## V. Community and Local Considerations

34. An important objective of this alternative would be to balance more effectively local concerns associated with the scale and location of permanent border infrastructure while continuing to address CBP operational requirements. The Big Bend region contains a combination of private ranchland, agricultural property, communities, transportation corridors, river environments, scenic landscapes, recreational areas, and rugged terrain. A technology-focused and site-specific approach would allow infrastructure requirements to be evaluated against those local conditions rather than applying a continuous barrier configuration throughout the project corridor. In such environments any benefits a permanent barrier would have are far outweighed by its adverse impacts as is made unnecessary by a more technological, mobile, and airborne alternative.

35. Potential community considerations such as maintaining landowner access, limiting unnecessary fragmentation of private property, reducing construction within visually or environmentally sensitive areas, minimizing interference with drainage and river processes, preserving existing transportation access, and reducing the amount of permanent infrastructure placed across remote landscapes could all be solved without the use of permanent barriers. These alternatives would still require formal engineering, environmental, cultural-resource, landowner, and operational review before implementation, but are actually achievable using existing means, methods, and equipment.

36. This alternative should therefore be evaluated not as the elimination of border-security infrastructure, but as a different allocation of infrastructure. Detection, surveillance,

communications, mobility, and response capabilities would provide less invasive coverage across portions of the border where continuous barriers present relatively greater adverse local impacts.

**VI. Technical Basis for Consideration**

37. CBP already uses a combination of roads, fences, surveillance towers, communications systems, and other tactical infrastructure along the southwest border, and its environmental planning documents recognize these systems interact effectively with private lands, public lands, transportation infrastructure, and sensitive environmental resources. A continuous Border Wall does not. This alternative applies that same multi-layered concept to the specific geographic and community characteristics of the Big Bend area.

38. The technical question for further analysis would therefore be whether a combination of targeted fencing, linear detection, improved access, relocatable surveillance towers, mobile surveillance systems, and available aerial surveillance could satisfy identified CBP operational requirements with a smaller permanent physical footprint than the current project concept.

39. Before selection or implementation, the alternative would require detailed terrain and line-of-sight analysis, detection-coverage modeling, communications analysis, hydrologic and drainage review, environmental and cultural-resource analysis, land-access coordination, lifecycle maintenance estimates, cost comparison, and evaluation by CBP operational personnel. Those studies would allow decision-makers to compare the current proposal and this alternative based on measurable security capability, construction requirements, lifecycle cost, maintainability, environmental effects, and effects on surrounding communities.

## VII. Big Bend Integrated Border Security Alternative

40. The proposed **Big Bend Integrated Border Security Alternative** provides a layered combination of physical barriers, autonomous surveillance, aerial coverage, and fiber-optic infrastructure at an estimated cost of **$532 million**, compared with approximately **$1.223 billion** awarded for the federal **Big Bend Project 2 (BBT-2)**, which covers approximately 68 miles of primary border-wall system. If bollard-style walls are determined to be appropriate, the proposed could include, if appropriate, **$375 million** and up to 15 miles of 30-foot steel-bollard barrier at an estimated $25 million per mile all to be deployed in the urban areas in or in the vicinity of Presidio at locations that would be most effective and appropriate; **$50 million** for 25 GDIT Relocatable Autonomous Surveillance Towers (RAST) at an estimated $2 million each; **$90 million** for three MQ-9/Predator B-class unmanned aircraft at an estimated $30 million each to provide sector-wide aerial surveillance; and **$17 million** for 68 miles of fiber-optic infrastructure at an estimated $250,000 per mile. The resulting **$532 million total is approximately $691 million or 56.5%, below the $1.223 billion BBT-2 contract value**, while emphasizing a layered security architecture that combines strategically placed physical barriers with persistent ground and aerial surveillance and communications infrastructure. All component prices used in this proposal are **rough-order-of-magnitude planning estimates derived from publicly available government documents, contract information, manufacturer information, and open-source reporting; they are not vendor quotations, negotiated procurement prices, or final engineering estimates.** GDIT has publicly confirmed a $71 million CBP RAST task order with a potential value of $115 million, but has not published a per-tower price, making the $2 million RAST figure specifically a planning estimate rather than an official GDIT price.

My name is Thaddeus C. Cleveland, my date of birth is July 31, 1973, the address of my Southern Border, LLC is P.O. 995 Sanderson, Texas 79848. I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on October 7, 2026.

THADDEUS C. CLEVELAND

# EXHIBIT B-1

U.S. Customs and Border Protection



# Smart Wall

## Smart Wall Construction

CBP is implementing President Trump's Executive Order 14165, "Securing our Borders," and Proclamation 10142, "Declaring a National Emergency at the Southern Border of the United States." CBP is doing this, in part, by using $46.5 billion from the Working Families Tax Cut Act to build the Smart Wall. The Smart Wall includes a steel bollard wall along with roads, detection technology, cameras, lighting and in some cases waterborne barrier or a secondary wall to create a double-layer barrier.



The Smart Wall improves Border Patrol's ability to detect, identify, and stop illicit activity along U.S. borders. The construction of these barriers, along with agents deployed to the Southwest border's most dangerous areas, is transforming what it means to have true border security.

Since the Border Patrol began building border walls more than 30 years ago, they have proven to be effective for gaining operational control of the border. The right combination of infrastructure, technology, and personnel is key to the Border Patrol's mission to protect America. That mission is critical to our national security.

CBP has learned many lessons since the first barriers were constructed. These were simple, makeshift barriers created from Vietnam-era landing mat. Today's barriers are steel bollard walls built in single or double layers. Roads and detection technology are built along with them, supporting the agents who patrol these barriers to keep America safe.

## Waterborne Barriers



CBP has begun to place waterborne barriers in the Rio Grande River. These barriers are designed to stop criminal organizations from using our border waterways for illegal activity. They are intended to deter people from illegally and dangerously crossing our nation's border waterways.

Waterborne barriers also help protect the surrounding landscape and natural barriers, like steep cliffsides, by preventing criminals and illegal aliens from reaching them. In the same way, they support the steel bollard wall systems built on land nearby. Waterborne barriers are intended to create a safer border environment for everyone, for patrolling agents as well as river enthusiasts.

## Big Bend Sector

CBP is not planning to construct 30-foot-high, steel bollard barrier in Big Bend National Park, Big Bend Ranch State Park, or the Black Gap Wildlife Management Area. Instead, CBP will use technology like cameras and sensors. In limited areas, it will use low-profile, vehicle barriers.

Placed strategically, these will work with natural barriers to further restrict illegal vehicle access in these areas.

CBP continues to work closely with the National Park Service (NPS) to ensure that access to the Rio Grande River and hiking trails, such as the Mariscal Trail, remains open at the park during and after construction. Additionally, CBP and the NPS have been identifying cultural, historical, and biological resources in the park that have the potential to be affected by the planned project. We are working together to find ways to avoid or minimize impacts to these resources.

## Environmental Stewardship

CBP remains committed to environmental stewardship, even with the use of the DHS Secretary's waiver authority. During barrier planning and construction, CBP conducts environmental and cultural resource reviews, requests public feedback, and strives to minimize impacts as effectively as it can while continuing to meet operational needs.

Visit the Smart Wall FAQs page

## Click and zoom on the map to see more information about the Smart Wall

Legend Layers Filter

200 mi

Powered by Esri

CBP is using the following to define the Smart Wall status:

- **Awarded —** Represents contracts that have been awarded, and the project is in the design phase or early construction activities have begun.
- **Under Construction —** Represents projects where border wall panels or waterborne barrier is currently being constructed/deployed.
- **Completed —** Represents the total mileage that has been completed since 1/20/2025.

# U.S. - Mexico Border - 1,954 miles

**Existing Primary Wall (prior to 1/20/2025 that met U.S. Border Patrol operational requirements): ~644 miles Primary Wall & ~75 miles of Secondary Wall**

| Barrier Type | Executing Agency | Awarded *(Design Phase)* | Under Construction | Completed | Total | End State |
|---|---|---|---|---|---|---|
| **Primary Smart Wall (New)** | CBP | 193.1 | 350.2 | 77.2 | 620 | 1,591 miles* |
| | Department of War | - | 0 | 5.8 | 6 | |
| **Primary Smart Wall (Replacement)** | CBP | 63.7 | 30.1 | 28.4 | 122 | |
| | Department of War | - | - | 15.2 | 15 | |
| **Vehicle Barrier** | CBP | 183 | 0 | 0 | 183 | |
| **Waterborne Barrier System** | CBP | 115.4 | 367.3 | 50.0 | 533 | 533 miles |
| **Secondary Border Wall** | CBP | 45.4 | 444.4 | 88.0 | 578 | 653 miles |
| **Total** | - | - | - | 264.6 | - | - |

** CBP is deploying approximately 538 miles of technology in locations with previously constructed barrier. Approximately 205 miles of detection technology in the Big Bend Sector will be deployed near the vehicle barriers and an additional approximately 167 miles of the U.S./Mexico border without barrier will be covered by other non-wall funded detection technology due to unfavorable terrain or remoteness of location for a total of*

*372 miles of the border covered by detection technology alone. The mileages above may vary due to rounding and may change slightly until all designs are completed and the alignments are finalized.*

# Project Overview

## California

| Project Name | Sector | Primary Wall (miles) | Secondary Wall (miles) | Waterborne Barriers (miles) | Vehicle Barriers (miles) |
|---|---|---|---|---|---|
| **San Diego 4 Wall Project** | San Diego | 0.5 | 0.8 | - | - |
| **San Diego Jacumba Wall Project** | San Diego | 2.1 | - | - | - |
| **San Diego Smugglers Gulch** | San Diego | 0.1 | - | - | - |
| **San Diego 1 Wall Project** | San Diego | 8.9 | - | - | - |
| **San Diego 2 Wall Project** | San Diego | - | 43.1 | - | - |
| **El Centro 1 Wall Project** | El Centro | 9.1 | 37.1 | - | - |
| **El Centro 2 Wall Project** | El Centro | - | 33.5 | - | - |

## Arizona

| Project Name | Sector | Primary Wall (miles) | Secondary Wall (miles) | Waterborne Barriers (miles) | Vehicle Barrier (miles) |
|---|---|---|---|---|---|
| **Yuma 10/27 Barry M. Goldwater Range Wall Project** | Yuma | - | 0.2 | - | - |
| **Yuma 1 Wall Project** | Yuma | - | - | - | - |
| **Yuma 2 Wall Project** | Yuma | 31.1 | 52.2 | 0.5 | - |
| **Yuma Barry M. Goldwater Range Department of War Wall Project** | Yuma | 15.3 | - | - | - |
| **Tucson Sonoita Wall Project** | Tucson | 24.7 | - | - | - |
| **Tucson 10-4 Wall Project** | Tucson | 0.2 | - | - | - |
| **Tucson 10-6 Wall Project** | Tucson | 1.9 | - | - | - |
| **Tucson 1 Wall Project** | Tucson | - | 22.5 | - | - |
| **Tucson 2 Wall Project** | Tucson | 20.7 | 91.4 | - | - |
| **Tucson 3 Wall Project** | Tucson | - | 66.1 | - | - |
| **Tucson 4 Wall Project** | Tucson | 13.1 | 45.4 | - | - |
| **Tucson 5 Wall Project** | Tucson | 61.7 | - | - | - |

## New Mexico

| Project Name | Sector | Primary Wall (miles) | Secondary Wall (miles) | Waterborne Barriers (miles) | Vehicle Barrier (miles) |
|---|---|---|---|---|---|
| **El Paso Santa Teresa Secondary Wall Project** | El Paso | - | 7.0 | - | - |
| **El Paso Antelope Wells Project** | El Paso | - | - | - | - |
| **El Paso 16-4 Anapra Wall Project** | El Paso | 1.3 | - | - | - |
| **El Paso 2 (Deming) Wall Project** | El Paso | 0.2 | - | - | - |
| **El Paso 1 Wall Project** | El Paso | 7.0 | - | - | - |
| **El Paso 2 Wall Project** | El Paso | 22.6 | - | - | - |
| **El Paso 3 Wall Project** | El Paso | 43.4 | 5.9 | - | - |
| **El Paso 4 Wall Project** | El Paso | 48.6 | 60.1 | - | - |

| Project Name | Sector | Primary Wall (miles) | Secondary Wall (miles) | Waterborne Barriers (miles) | Vehicle Barrier (miles) |
|---|---|---|---|---|---|
| **El Paso 5 Wall Project** | El Paso | - | 112.5 | - | - |
| **El Paso Antelope Wells Department of War Wall Project** | El Paso | 6.0 | - | - | - |

## Texas

| Project Name | Sector | Primary Wall (miles) | Secondary Wall (miles) | Waterborne Barriers (miles) | Vehicle Barrier (miles) |
|---|---|---|---|---|---|
| **Big Bend 1 Wall Project** | Big Bend | 47.3 | - | - | - |
| **Big Bend 2 Wall Project** | Big Bend | 62.2 | - | - | - |
| **Big Bend 3 Wall Project** | Big Bend | 56.3 | - | - | - |
| **Big Bend 4 Project** | Big Bend | - | - | - | 17.3 |
| **Big Bend 5 Project** | Big Bend | - | - | - | 165.7 |
| **Del Rio 1 Wall Project** | Del Rio | 22.2 | - | 39.9 | - |
| **Del Rio 2 Wall Project** | Del Rio | 7.6 | - | 22.8 | - |

Smart Wall | U.S. Customs and Border Protection

| Project Name | Sector | Primary Wall (miles) | Secondary Wall (miles) | Waterborne Barriers (miles) | Vehicle Barrier (miles) |
|---|---|---|---|---|---|
| **Del Rio 3 Wall Project** | Del Rio | 21.6 | - | - | - |
| **Del Rio 4 Wall Project** | Del Rio | 32.4 | - | 36.2 | - |
| **Laredo 1 Wall Project** | Laredo | 14.9 | - | 16.1 | - |
| **Laredo 2 Wall Project** | Laredo | 41.2 | - | 49.8 | - |
| **Laredo 3 Wall Project** | Laredo | 25.3 | - | 56.4 | - |
| **Laredo 4 Wall Project** | Laredo | 26.7 | - | - | - |
| **Rio Grande Valley Border Wall Project** | Rio Grande Valley | 27.2 | - | - | - |
| **Rio Grande Valley 02/04/10 Wall Project** | Rio Grande Valley | 17.4 | - | - | - |
| **Rio Grande Valley Waterborne Barrier Project** | Rio Grande Valley | - | - | 17.4 | - |
| **Rio Grande Valley 1 Wall Project** | Rio Grande Valley | 10.4 | - | 59.0 | - |
| **Rio Grande Valley 2 Wall Project** | Rio Grande Valley | - | - | 108.8 | - |

| Project Name | Sector | Primary Wall (miles) | Secondary Wall (miles) | Waterborne Barriers (miles) | Vehicle Barrier (miles) |
|---|---|---|---|---|---|
| **Rio Grande Valley 3 Wall Project** | Rio Grande Valley | - | - | 125.8 | - |
| **Rio Grande Valley 4 Wall Project** | Rio Grande Valley | 32.5 | - | - | - |

** There are a small number of projects that span multiple states, such as Yuma Sector spanning California and Arizona, and El Paso Sector spanning New Mexico and Texas.*

Close all Open all

## Smart Wall Information +

Frequently Asked Questions

## Smart Wall Announcements +

DHS, CBP continue to strengthen border security with five new Smart Wall contracts in Texas and Arizona

DHS, CBP award $4.5B in new contracts under WFTCA for Smart Wall construction along southwest border

DHS issues waiver for border wall in Texas

DHS awards contract for 27 miles of new border wall in Arizona; issues waiver to accelerate construction in Texas

CBP awards first border wall contract of President Trump's second term

## Smart Wall Environmental Planning

+

View Documents Open for Public Comment

**Last Modified: Oct 07, 2026**

# EXHIBIT B-2


Legend
Layers
Filter
Lincoln National Forest
Carlsbad
Las Cruces
Fort Bliss
El Paso
Juárez
Midland
Odessa
Abilene
Fort Worth
Arlington
Dallas
LLANO ESTACADO
(STAKED PLAIN)
San Angelo
Waco
Fort Hood
Killeen
TEXAS
EDWARDS PLATEAU
Bryan
Austin
Nuevo Casas Grandes
Rio Grande
Big Bend Ranch SP
Big Bend National Park
Acuña
San Antonio
CHIHUAHUA
Chihuahua
SERRANIAS DEL BURRO
Victoria
COAHUILA
Corpus Christi
Rio Conchos
Laredo
Nuevo Laredo
COASTAL PLAIN
Hidalgo del Parral
Monclova
Rio San Miguel
Rio Verde
SIERRA MADRE OCCIDENTAL
Reynosa
SIERRA MADRE ORIENTAL
Brownsville
Los Mochis
Monterrey
Torreón
Saltillo
NUEVO LEON
SINALOA
Culiacan
DURANGO
100 mi
Esri, HERE, Garmin, FAO, NOAA, USGS, EPA, NPS | Sources: Esri; U.S. Department o…
Powered by Esri

# EXHIBIT B-3



## GENERAL ATOMICS

# MQ-9 UNMANNED AIRCRAFT SYSTEM

The MQ-9 Unmanned Aircraft System (UAS) is used by Air and Marine Operations (AMO) to increase domain awareness in the land and maritime environments. The MQ-9 is integral to AMO's strategy to secure U.S. borders and enforce U.S. laws, increasing CBP's ability to detect, identify, classify, and track potential illicit activities.

In 2012, AMO added Vehicle and Dismount Exploitation Radar (VADER), a strategic and tactical operations sensor that provides comprehensive situational awareness for an expanded area. It is designed to detect moving targets and perform coherent change detection. VADER-equipped UAS are an effective tool to help crews detect, classify, and track moving targets over land.

Additionally, AMO also utilizes SeaVue sensors on UAS which are effective for detecting, classifying, and tracking maritime surface targets in coastal areas surrounding the U.S. and extending operations into the maritime transit zone of bulk quantities of illicit substances.

AMO also deploys the UAS to aid in disaster relief and emergency response efforts coordinated with Department of Homeland Security partners, such as the Federal Emergency Management Agency and the U.S. Coast Guard.

The UAS is integral in AMO's strategy to secure U.S. borders, enforce U.S. laws, and play a vital role in conducting search and rescue missions.

### PERFORMANCE AND WEIGHTS:

- Maximum Speed
  240 knots (276 mph)
- Service Ceiling Altitude
  50,000 ft
- Endurance
  20 hours
- Maximum Gross Weight
  10,500 lbs

### FEATURES:

- Mobile ground control station
- Electro-optical/infrared sensor
- VADER sensor/Ground Moving Target Indicator
- SeaVue marine search radar